**In the Matter of C.D.F., a Minor, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–92–00410–CV**

Court of Appeals of Texas, Dallas.

March 31, 1993.

Maridell Templeton, Garland, for appellant.

April E. Smith, Dallas, for appellee.

Before THOMAS, OVARD and MORRIS, JJ.

## OPINION

OVARD, Justice.

Appellant C.D.F., a juvenile, appeals a trial court judgment finding that he engaged in delinquent conduct by committing murder. In eight points of error, appellant claims: (1) there is no evidence or insufficient evidence to support the judgment; (2) his jury waiver was ineffective; (3) the in-court identification was tainted by an improper photo line-up; (4) it was error to fail to serve him with the grand jury certificate showing the case was certified for a determinate sentence; (5) the trial court erred in reopening the testimony after both sides closed; and (6) the trial court erred in

admitting certain evidence. Because we determine the evidence is sufficient to support the judgment but agree that appellant's jury waiver was ineffective, we reverse the trial court's judgment and remand for further proceedings.

On June 28, 1991, appellant was a resident of Dallas House, a Texas Youth Commission facility. Along with other Dallas House residents, he worked at the Park South branch of the YMCA. On that day, appellant accompanied children from the Y on a trip to Six Flags Over Texas amusement park. They returned to the Y at approximately 5:30 or 5:45 p.m. At 6:13 p.m., Dallas Police received a report that a man, later identified as Ahmed Arte, had been shot at a store on Hickman Street, later determined to be the Seoul Food Store, of which Arte was co-owner.

Rodrick Lewis, a frequent customer of the Seoul Food Store, testified that he went to that store, which is a couple of blocks from the Y, on June 28, 1991. He stated that appellant was standing by the counter and another man was standing by the door. Appellant asked the other man to get a Coke for him. Lewis made a purchase and, while still standing at the counter, heard change fall to the floor. He turned to see appellant, standing two yards away, bend down to pick up the change. Then appellant took a small silver gun out of his sock. Lewis immediately ran outside. Once outside he heard a gunshot. He saw appellant come out of the store and run away, still holding the gun.

James Bryant, a State Juvenile Officer at Dallas House, testified that he received a call to pick up Dallas House residents at the Y at 5:30 or 5:45 p.m. on June 28, 1991. He stated that he arrived at the Y between 6:00 and 6:15 p.m. As he pulled up in front of the Y, he saw appellant coming from the side of the Y carrying a Coke and bags of chips. Appellant admitted to him that he had been off the grounds of the Y and had gone to a store.

The State introduced the Texas Youth Commission vehicle mileage log for the vehicle driven by Bryant to pick up the residents. Bryant's signature is by the June 28, 1991, entry he made to document his trip to the Y. According to the log, he departed Dallas House at 6:30 p.m. and returned from the Y at 7:00 p.m. He stated that the log is an official record and that he was uncertain of his prior testimony about what time he received the call that the residents had returned to the Y.

Police found appellant's fingerprint on the inside of the front door of the Seoul Food Store. The murder weapon was not recovered. Larry Fletcher, a firearms examiner with the Dallas County Institute of Forensic Sciences, stated that the bullet recovered from the body of the deceased is a type of rifle cartridge. He testified that it was probably fired from a .30 caliber rifle, the type of rifle that could be cut down to a size that would fit in a sock.

Bertha Bluitt, a friend of appellant's who also worked at the Y, testified that she was across the street from the store when she heard two or three gunshots and a scream. She saw two men run out of the store. She gave descriptions of the men she saw which did not fit appellant's description. She specifically said appellant was not one of the men she saw run out of the store. She stated that she saw appellant get on the Texas Youth Commission van "way before" she started walking to the store, which she said was a little after 5:30.

Detriah Griggs, a friend of Bluitt's, testified that she was with Bluitt across the street from the store when some men ran out of the store holding bags. She did not know how many men came out of the store, but it was more than one. She also stated that she heard more than one gunshot.

Abdi Lahi, the deceased's cousin and partner, was not present when the shooting occurred, stated that he had only been away from the store from approximately 5:00 p.m. to 5:30 p.m. that evening. He stated that his cousin was alive when he left the store, but had been shot by the time he returned. He testified that no property or money was missing from the store after the shooting.

In his fifth and sixth points of error, appellant contends the evidence is

insufficient to support the judgment. In reviewing the sufficiency of the evidence to support a guilty verdict, the evidence is viewed in the light most favorable to the verdict. *Flournoy v. State*, 668 S.W.2d 380, 383 (Tex.Crim.App.1984). This Court's inquiry is limited to determining whether, viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Girard v. State*, 631 S.W.2d 162, 163 (Tex.Crim.App. [Panel Op.] 1982). The appellate court must consider all of the evidence presented, whether properly or improperly admitted. *Nickerson v. State*, 810 S.W.2d 398, 400 (Tex.Crim.App.1991). In a juvenile case, the question is whether the evidence considered as a whole shows that the State sustained its burden of proof beyond a reasonable doubt. TEX.FAM.CODE ANN. § 54.03(f) (Vernon 1986); *In re S.D.W.*, 811 S.W.2d 739, 749 (Tex.App.—Houston [1st Dist.] 1991, no writ). In a trial before the court, the judge determines the credibility of the witnesses and can believe or reject all or any part of the testimony. *Johnson v. State*, 571 S.W.2d 170, 173 (Tex.Crim.App. [Panel Op.] 1978). The fact finder can draw reasonable inferences and make reasonable deductions from the evidence within the context of the crime. *Benavides v. State*, 763 S.W.2d 587, 588–89 (Tex.App.—Corpus Christi 1988, pet. ref'd).

Appellant contends in his first four points of error that certain testimony, the Texas Youth Commission vehicle mileage log, and Lewis's in-court identification were improperly admitted and therefore should not be considered by this Court in determining his sufficiency points. Without that evidence, he claims, the evidence is insufficient to support the judgment. We need not address those points to determine the sufficiency of the evidence as we are to consider all evidence presented, including improperly admitted evidence. *Nickerson*, 810 S.W.2d at 400. Consequently, we shall review the entire record.

The record shows appellant was identified by an eyewitness who saw him in the store with a gun. There was no question that appellant was at least within walking distance of the store near the time of the murder. Appellant admitted to Bryant that he had just been to a store. There was some conflicting evidence as to the time of the shooting and the time of appellant's departure from the Y. There was also a conflict between Bluitt's testimony and Lewis's testimony regarding whether appellant ran from the store. However, the trial court could resolve the conflicts against appellant and could believe Lewis and disbelieve Bluitt. *See Johnson*, 571 S.W.2d at 173.

While testimony was presented that the deceased was shot with a rifle, that is not inconsistent with Lewis's testimony that appellant had the gun in his sock, as Fletcher's testimony explained that the type of rifle used in the offense can be cut down to a size that would fit in a sock. Even if the other man in the store actually shot the deceased, appellant could have been found guilty as a party because he had a gun. Further, appellant's flight from the scene is a circumstance from which guilt may be inferred. *Cantrell v. State*, 731 S.W.2d 84, 92 (Tex.Crim.App. 1987). Additionally, the trial court could consider all the evidence on the timing of events, determine which testimony to believe, and make reasonable deductions as to what probably occurred. *Benavides*, 763 S.W.2d at 588–89. We conclude that a rational trier of fact could have concluded, beyond a reasonable doubt, that appellant committed the offense, either alone or acting with another. We overrule points five and six.

In his seventh point of error, appellant contends the trial court erred in accepting his jury waiver and proceeding with a bench trial because his attorney did not join in the waiver as required by section 51.09(a) of the Texas Family Code.

A waiver of a jury trial by a child must be made by the child *and* the child's attorney. TEX.FAM.CODE ANN. § 51.09(a)(1) (Vernon 1986). The child and the attorney

must be informed of and understand the right to a jury trial, and the possible consequences of waiving. TEX.FAM.CODE ANN. § 51.09(a)(2) (Vernon 1986). The waiver must be in writing or in court proceedings that are recorded. TEX.FAM.CODE ANN. § 51.09(a)(4) (Vernon 1986).

The record clearly shows that appellant was advised of his right to a jury trial, his right to waive a jury trial, and the consequences of waiver. Appellant stated in open court that he wanted to give up his right to a jury trial. The trial court went on to ask appellant's mother if she agreed with his decision to give up his right to a jury trial. She answered affirmatively. The record, however, is void of any evidence showing that appellant's attorney understood the right to waive a jury or the possible consequences of waiving it, or that appellant's attorney joined in the child's decision to waive a jury trial.

The State points out that the waiver must be by the child, and the attorney's role is limited to concurring in such waiver, citing *I.G. v. State*, 727 S.W.2d 96, 98 n. 1 (Tex.App.—San Antonio 1987, no writ). The State argues that the record shows that appellant's attorney demonstrated concurrence in appellant's decision to waive. The State relies on the docket sheet entry for September 27, 1991, that says "set for TBC." Further, the State relies on the attorney's silence during the hearing wherein appellant told the trial court he wanted to waive his right to a jury trial.

 Even if the statute only requires the attorney to merely concur in the child's waiver, counsel must do so in such a manner so as to comply with section 51.09. The provisions of section 51.09 are mandatory. *In re K.W.S.*, 521 S.W.2d 890, 894 (Tex.Civ.App.—Beaumont 1975, no writ). That concurrence must be in writing or clearly demonstrated in court proceedings that are recorded. The docket sheet showing "set for TBC" does not indicate what parties were involved in the setting. Even if the attorney participated in the trial setting, we cannot agree that the attorney's acquiescence in placing the case on a nonjury docket or his failure to object constitutes

compliance with section 51.09. When the record is silent as to a waiver by appellant's attorney, a waiver may not be presumed. *See Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711–12, 23 L.Ed.2d 274 (1969); *V.C.H. v. State*, 662 S.W.2d 42, 45 (Tex.App.—Houston [1st Dist.] 1983, no writ). Thus, section 51.09 was not complied with and appellant's waiver of a jury trial was ineffective absent a showing of joinder by his attorney. The attorney's consideration of the incomplete waiver issue on behalf of the child assures protection of the child's rights. Consequently, the trial court erred in proceeding without a jury waiver by both necessary parties. We sustain appellant's seventh point of error, reverse the judgment of the trial court, and remand for further proceedings.

Due to our disposition of point seven, and because we are required to consider even improperly admitted evidence, we need not reach appellant's remaining points of error.