**AFFIRM, and Opinion Filed August 19, 1997**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

---

## No. 05-96-01264-CV

---

## IN THE MATTER OF P.A., A JUVENILE

---

**On Appeal from the 304th District Court
Dallas County, Texas
Trial Court Cause No. JD-38284-W**

---

## O P I N I O N

Before Justices Lagarde, Hankinson, and Bridges
Opinion By Justice Bridges

Appellant P.A., a juvenile, was found by a jury to have engaged in delinquent conduct by committing capital murder and aggravated assault. Based on the jury's recommendation, the trial court committed appellant to the Texas Youth Commission for twenty years. On appeal, appellant contends (1) the evidence is insufficient to support the judgment, and (2) the trial court abused its discretion by admitting extraneous offense testimony. We affirm the trial court's judgment.

## FACTS

The Vicente family lived in a three-bedroom apartment in northwest Dallas. During the early morning hours of January 14, 1996, appellant and two other men broke into the apartment. At the time of the break-in, Filemon and Minerva Vicente and their children Brent, Fredy, and Marlene, and Marlene's husband, Andres Victor, were asleep inside the apartment.

Brent Vicente testified that he woke up when his mother, accompanied by an Hispanic man with a revolver, came into the bedroom where he and Fredy were sleeping. The man held the gun to Brent's head, told him to get up, and demanded the gold necklace Brent was wearing. The intruder then ordered Brent and Fredy into their parents' bedroom.

After they entered the second bedroom, Brent saw a white male holding a shotgun standing in the doorway. The Hispanic man called him "Justin." Justin pointed the shotgun at Minerva and Fredy while his companion searched the closet. Brent heard Justin speak to a third man in the apartment, but never actually saw him.

The Hispanic man tied up Fredy, Brent, and Minerva and went into the third bedroom. Brent heard his brother-in-law Andres scream followed by the sound of a "hit" on the wall. Fredy broke free of his bindings and, followed by Filemon, ran out of the bedroom. Brent and his mother stayed in the bedroom. Brent heard three gunshots. After a few minutes of silence, Brent ran out of the bedroom and found that Filemon, Fredy, and Andres had been shot. Fredy died at the scene. Filemon and Andres were taken to the

hospital, where Filemon later died.

The intruders took jewelry, stereo speakers, and several compact discs. One of the stereo speakers was later found on the stairwell near the Vicente apartment. A sawed-off shotgun was found under one of the victims in the hallway.

Andres Victor confirmed much of Brent's testimony. Andres stated that a Hispanic man came into his bedroom, put a gun to his head, and said "[t]his is a holdup." The intruder pulled the trigger, but the gun did not fire. Andres yelled to alert the other family members of the danger and began fighting with the gunman. The fight moved into the hallway, and Andres saw Fredy running toward him. Andres heard three shots. One of the shots hit him in the chest.

Justin Sandlin, an accomplice in the murders and robbery, testified that, on January 14, 1996, he, appellant, and Javier Vidaurri were riding in a gray Honda Accord belonging to appellant's sister, Joyce. Because Javier needed money, they planned a robbery. Armed with a stun gun, a handgun, and a shotgun, the three men entered the Vicente apartment around 3 a.m. through the kitchen. Justin stated that appellant initially had both the stun gun and the shotgun and Javier had the handgun. Sometime later, appellant gave the shotgun to Justin. Javier entered the first bedroom with his shirt pulled over his face. A few minutes later, Javier came out of the bedroom dragging one of the Vicente men. Javier called Justin, handed him a briefcase from the second bedroom, and went into the third bedroom.

After Javier entered the third bedroom, a fight broke out. As the fight moved into the hallway, Justin saw two of the Vicentes running toward him. They knocked Justin to the floor, and he dropped his gun. Justin testified that he heard three gunshots. After the shots, Javier got up holding the revolver and said something in Spanish to Justin. According to Justin, appellant was not around when the fight in the hallway began. As Justin was running down the stairs, he saw appellant run past the bottom of the stairs.

The three men fled the scene in the gray Honda, driven by appellant. Justin had been shot in the hand, and Javier had sustained a head injury. Appellant dropped Justin and Javier off at a pay telephone and drove away with a stereo speaker and several other items in the back seat of the car. Justin stated that these items had not been in the car earlier in the evening. From the pay telephone, Javier called the police, claiming he and Justin had been victims of a robbery. Justin and Javier were subsequently arrested for capital murder. Justin admitted that he had pleaded guilty to participating in the offense and had agreed to identify the other participants in exchange for a seven-year sentence.

Mike Chavez testified that he has known appellant since August 1995. Chavez recalled an incident in January 1996 when appellant and his sister Joyce came over in a gray Honda Accord. Appellant asked Chavez to keep a cassette case and necklace for "safekeeping." Chavez agreed, and appellant left the items with him. Within thirty minutes, appellant returned, retrieved the necklace from Chavez, and left again. Chavez looked in the cassette case and saw two guns in the bottom of the case covered by cassette tapes.

Chavez stated that one gun looked like a revolver and the other looked like an automatic. Within forty-five minutes, appellant again returned and asked for the cassette case. As Chavez was carrying the cassette case to appellant, who was waiting outside in the Honda, Chavez's mother questioned him about the case. She took the case from him, saw the guns inside, and called the police.

Mark Donihoo, a Plano police officer, testified that he responded to Mrs. Chavez's call on January 15, 1996. When he arrived at the Chavez house, he saw appellant and his sister parked in a gray Honda Accord in front of the house. Donihoo seized the case containing the two guns and several rounds of ammunition. The State presented forensic evidence showing that one of the guns in the cassette case fired the bullet that killed Filemon Vicente.

While Donihoo was at the Chavez house, he was approached by two victims of an aggravated assault that occurred on January 12, 1996, two days before the Vicente murders. One of the victims, Gary Mauldin, recognized the car parked in front of the Chavez house and identified appellant as the perpetrator of the earlier assault.

Erik Mateer, another victim of the January 12th aggravated assault, identified appellant in court as the person who pointed a sawed-off shotgun at him. On January 12, Mateer was with his friends Gary Mauldin and Jerry Mincke. They noticed a gray Honda Accord "suspiciously driving" around the neighborhood. A young Hispanic female was driving, and the passenger was an Hispanic man. Thinking the people in the gray Honda

might have Mauldin's speakers, which recently had been stolen, Mateer parked his truck sideways in the road to block the Honda. Mauldin asked appellant if they had his speakers. Appellant said he did not have the speakers, pulled a sawed-off shotgun out of his car, and pointed it at Mateer, Mauldin, and Mincke.

Mateer stated that he saw appellant again a few days later at the Chavez's house. Mateer also recognized the gray Honda. Mateer identified a photograph of the shotgun found at the Vicente crime scene as the one appellant pulled on him on January 12th. Mateer specifically remembered the barrel and the old age of the gun.

## SUFFICIENCY OF THE EVIDENCE

In his third point of error, appellant contends the evidence is insufficient to support his adjudication as a delinquent for capital murder and aggravated assault. Specifically, although appellant concedes the evidence shows he entered the Vicente apartment, he claims there is no evidence to show he aided Javier Vidaurri and Justin Sandlin in the commission of the offenses.

### 1. Standard of Review

The standard of review for sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *In re C.D.F.*, 852 S.W.2d 281, 284 (Tex. App.--Dallas 1993, no writ). This standard leaves to the fact finder the responsibility to resolve conflicts in the testimony,

to weigh the evidence, and to draw reasonable inferences from basic to ultimate facts. *See In re C.D.F.*, 852 S.W.2d at 284; *Dumas v. State*, 812 S.W.2d 611, 615 (Tex. App.--Dallas 1991, pet. ref'd). The jury is the exclusive judge of the witnesses' credibility and the weight to be given their testimony. *Bonham v. State*, 680 S.W.2d 815, 819 (Tex. Crim. App. 1984), *cert. denied*, 474 U.S. 865 (1985); *see also In re C.D.F.*, 852 S.W.2d at 284. As such, the jury is free to accept or reject any or all of the evidence presented by either side. *See Saxon v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). The fact finder may draw reasonable inferences and make reasonable deductions from the evidence. *Benavides v. State*, 763 S.W.2d 587, 588-89 (Tex. App.--Corpus Christi 1988, pet. ref'd).

## 2. Applicable Law

A person commits capital murder if he intentionally or knowingly causes the death of an individual and intentionally commits the murder in the course of committing or attempting to commit robbery. TEX. PENAL CODE ANN. § 19.02(b)(1) (Vernon 1994); TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon 1994). A person commits an assault if he intentionally, knowingly, or recklessly causes bodily injury to another. TEX. PENAL CODE ANN. § 22.01(a)(1) (Vernon 1994). If a person uses a deadly weapon to commit the assault, the offense becomes aggravated assault. TEX. PENAL CODE ANN. § 22.02(a)(2) (Vernon 1994).

A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, directs,

-7-

aids, or attempts to aid the other person to commit the offense. TEX. PENAL CODE ANN. § 7.02(a)(2) (Vernon 1994). An accused's mere presence at the commission of the offense, standing alone, is not enough to prove he was a party to the offense. *Michael v. State*, 864 S.W.2d 104, 107 (Tex. App.--Dallas 1993, no pet.). However, presence at the scene is a factor to be considered to show the accused was a participant. *Id.* Participation in a criminal offense may be inferred from the circumstances of the offense. *Beardsley v. State*, 738 S.W.2d 681, 684 (Tex. Crim. App. 1987). In determining whether the accused participated as a party, the fact finder may look to events that occurred before, during, and after the offense. *Id.*

### Discussion

In this case, appellant concedes that the evidence shows he was in the Vicente apartment. Nevertheless, arguing that mere presence at the scene of the crime is not sufficient to establish his guilt, appellant claims there is no other evidence showing he encouraged or aided the commission of the offenses. We disagree.

Justin Sandlin, the accomplice, testified that appellant participated in the commission of the offenses. Appellant was present when the robbery was planned. Appellant initially had possession of the stun gun and the sawed-off shotgun. Finally, appellant drove the getaway car, a gray Honda Accord, containing several items, including a stereo speaker, that had not been there earlier in the evening.

However, because a conviction cannot be had on the testimony of an accomplice

-8-

unless that testimony is corroborated by other evidence tending to connect the defendant with the offense, we must look to see if the State presented other evidence tending to connect appellant with the crime. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 1979); *Reed v. State*, 744 S.W.2d 112, 126 (Tex. Crim. App. 1988).[1] Brent Vicente stated that he was aware of a third person in the apartment, although he did not actually see him. When appellant was arrested, he had possession of two guns, one of which fired the bullet that killed Filemon Vicente. Mateer identified appellant as the person who pulled a sawed-off shotgun on him two days before the murders. Mateer testified that the shotgun he saw resembled the shotgun found at the Vicente apartment. Mateer also connected appellant to the gray Honda Accord. Viewing this evidence in the light most favorable to the verdict, we conclude the evidence is legally sufficient to support appellant's conviction as a party to the offenses. We overrule appellant's third point of error.

## EXTRANEOUS OFFENSE TESTIMONY

In his first and second points of error, appellant argues that the trial court erred in allowing Officer Donihoo and Eric Mateer to testify about the January 12, 1996 incident with the sawed-off shotgun. Appellant contends this incident constituted an inadmissible extraneous offense.

Outside the presence of the jury, the State presented the testimony of Officer

---

[1] We note appellant does not directly challenge the sufficiency of the corroborative evidence on appeal.

Donihoo concerning the January 12, 1996 incident with the sawed-off shotgun. The State informed the court that Erik Mateer would also testify about the January 12th incident. Appellant objected to any testimony concerning this incident, contending it was an inadmissible extraneous offense. Specifically, appellant argued that, because the witnesses could not be certain the shotgun used on January 12th was the same one found at the Vicente apartment, the evidence was irrelevant to connect appellant with the Vicente murders. The trial court ruled that the testimony concerning the January 12th incident was admissible.

## 1. Applicable Law

In a juvenile proceeding, we apply the Texas Rules of Criminal Evidence. *See* TEX. FAM. CODE ANN. § 51.17(c) (Vernon 1996). Under rule 404(b) of the rules of criminal evidence, evidence of a defendant's prior crimes, wrongs, or acts is not admissible to prove the character of the person in order to show that he acted in conformity therewith. TEX. R. CRIM. EVID. 404(b). However, such evidence may be admissible if it has relevance beyond its tendency to show a defendant acted in conformity with his bad character. *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990) (op. on reh'g). A party may introduce such evidence where it logically serves to make more or less probable (1) an elemental fact, such as identity or intent, (2) an evidentiary fact, such as motive, opportunity, or preparation, leading inferentially to an elemental fact, or (3) defensive evidence undermining an elemental fact. *See Santellan v. State*, 939 S.W.2d 155, 168-69

(Tex. Crim. App. 1997) (citing *Montgomery*, 810 S.W.2d at 387-88). Extraneous offenses are admissible to show identity if there is some distinguishing characteristic common to both the extraneous offense and the offense for which appellant was on trial. *Chambers v. State*, 601 S.W.2d 360, 362 (Tex. Crim. App. [Panel Op.] 1980). Additionally, evidence of extraneous offenses is admissible to corroborate accomplice witness testimony. *Lawton v. State*, 913 S.W.2d 542, 553 (Tex. Crim. App. 1995), *cert. denied*, 117 S. Ct. 88 (1996).

Although relevant, evidence of extraneous offenses may nonetheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. TEX. R. CRIM. EVID. 403. We review the trial court's ruling on the admissibility of the evidence of an extraneous offense under an abuse of discretion standard. *Montgomery*, 810 S.W.2d at 391.

When a party attempts to introduce evidence of other crimes, wrongs, or acts, the opposing party must object in a timely fashion to preserve error on appeal. The first objection should be under rule 404(b). The opposing party should urge that the evidence is not relevant because it constitutes evidence of an extraneous offense or extraneous misconduct. TEX. R. APP. P. 52(a); *Montgomery*, 810 S.W.2d at 387. Once that objection is made, the proponent of the evidence must satisfy the trial court that the evidence had relevance apart from its tendency to prove character of a person in order to show that he acted in conformity therewith. TEX. R. CRIM. EVID. 404(b); *Montgomery*, 810 S.W.2d at 387. After a trial court determines that extraneous offense evidence is relevant, a defendant must

further object that the probative value of the evidence is substantially outweighed by its prejudicial effect. *Nelson v. State*, 864 S.W.2d 496, 499 (Tex. Crim. App. 1993), *cert. denied*, 510 U.S. 1215 (1994). Failure to further object waives review of the claim on appeal. *Id.*

At trial, appellant objected that the testimony concerning the aggravated assault on Mauldin was inadmissible character conformity evidence under rule 404(b) of the rules of criminal evidence and that the State was attempting to introduce the evidence solely to prejudice the jury. However, although appellant argued that the evidence was prejudicial, he did not ask the trial court to balance the probative value of the evidence against the danger of unfair prejudice under rule 403. Consequently, to the extent appellant argues on appeal that the prejudicial effect of the evidence outweighed its probative value, we conclude he has waived review of this complaint. *See T.K.'s Video, Inc. v. State*, 832 S.W.2d 174, 176 (Tex. App.--Fort Worth 1992, pet. ref'd) (failure to request trial court to balance probative value of the evidence against the danger of unfair prejudice waives complaint on appeal). Accordingly, we will only consider whether the trial court abused its discretion in admitting the extraneous offense evidence under rule 404(b).

Appellant argues the evidence of the extraneous offense was not relevant under rule 404(b). He contends identity was not a contested issue because Justin Sandlin's testimony placed appellant at the Vicente apartment. However, contrary to appellant's assertions, identity was a contested issue at trial. Appellant's defense was that he was not present in

the Vicente apartment on the night of the murders and robbery and that Justin's testimony placing him at the scene was not credible because of his plea bargain with the State. Evidence that appellant recently had possession of a sawed-off shotgun similar to the one found at the crime scene makes it more probable that appellant was present in the Vicente apartment on the night of the murders. Moreover, the evidence was corroborative of the accomplice witness's testimony. *See Lawton*, 913 S.W.2d at 553. Thus, the evidence of the January 12, 1996 incident with the sawed-off shotgun had relevance apart from its tendency to show appellant acted in conformity with his bad character. *See Montgomery*, 810 S.W.2d at 387. We conclude that the trial court did not abuse its discretion in allowing evidence of the extraneous offense. We overrule appellant's first and second points of error.

We affirm the trial court's judgment.


_____
DAVID L. BRIDGES
JUSTICE


Do Not Publish
Tex. R. App. P. 90
961264F.U05

-13-