**In the Matter of Z.L.B.**

**No. 05–00–00222–CV.**

Court of Appeals of Texas,
Dallas.

Aug. 29, 2001.

George E. Ashford, III, Dallas, for Appellant.

William T. (Bill) Hill, Jr., Charles Patrick Reynolds, Assistant District Attorney, Dallas, for Appellee.

Before Justices MORRIS, MOSELEY, and FITZGERALD.

## OPINION

Opinion By Justice MORRIS.

In a hearing before the court without a jury, the trial court found that Z.L.B., a

juvenile, engaged in delinquent conduct by committing indecency with a child. In four issues presented on appeal, appellant contends the evidence was legally and factually insufficient to support the trial court's adjudication, the trial court erred by admitting hearsay evidence that did not meet the statutory prerequisites for outcry testimony, and the trial court erred in denying appellant's motion to suppress his written confession. Although we conclude the evidence is legally sufficient to support the trial court's delinquency adjudication, we conclude the trial court erred by admitting into evidence the proffered hearsay testimony. We also conclude the error requires reversal. Accordingly, we reverse the trial court's adjudication and remand for a new trial.

 Appellant, twelve years old at the time of the alleged offense, was accused of engaging in sexual contact with his little brother with the intent to arouse and gratify his own sexual desires. *See* TEX. PEN.CODE ANN. §§ 21.01(2), 21.11(a)(1) (Vernon 1994 and Supp.2001). Appellant complains in his second issue that the evidence was legally insufficient to support his adjudication. He specifically contends the evidence does not show that he engaged in sexual contact with his brother or, alternatively, that the evidence does not show he engaged in the contact with the intent to arouse or gratify his sexual desires. Adjudications of delinquency are based on the criminal standard of proof. *See* TEX. FAM.CODE ANN. § 54.03(f) (Vernon Supp.2001); *In re L.M.*, 993 S.W.2d 276, 284 (Tex.App.—Austin 1999, pet. denied). Therefore, we review the legal sufficiency of the evidence in adjudication of delinquency cases by applying the standards applicable to legal sufficiency challenges in criminal cases. *See L.M.*, 993 S.W.2d at 284; *see also C.D.F. v. State*, 852 S.W.2d 281, 284 (Tex.App.—Dallas 1993, no writ). We examine the evidence in the light most favorable to the judgment and determine

whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

In this case, appellant stated in a written confession that he had pulled down his brother's pants and touched his brother's "private" four or five times in a closet and in a living room. He also stated that he felt bad about what he had done. The director of the brother's daycare center testified as well. She stated that appellant's brother told her appellant was "touching his privates" and he wanted it to stop. On hearing that allegation, she contacted Child Protective Services, but the brother was "close-mouthed" with the police when the officer attempted to talk with him. At that time, the daycare director let the matter drop.

The daycare director next testified that appellant's brother later made a second claim that appellant was touching his "privates." When he said "privates," he pointed to his genital area. She asked him to indicate on her hand how appellant was touching him, and he rubbed "up and down" on her hand saying, "this is what he's doing to my privates." He also asked her to call the police so he could tell them what had happened. Afterward, he spoke with a police officer at the daycare center. At trial, appellant's five-year-old brother claimed he had lied when he told the police officer that appellant had touched his private part.

 Both the daycare director's testimony and appellant's confession show that he engaged in sexual contact; thus, the evidence is legally sufficient on this issue. Moreover, when viewed in the light most favorable to the trial court's ruling, evidence of the specific touching (supported by the facts that appellant engaged in some of the conduct hidden in a closet and

both he and his brother felt bad about it) is legally sufficient to prove appellant had the requisite intent. *See C.F. v. State,* 897 S.W.2d 464, 472 (Tex.App.—El Paso 1995, no writ). Accordingly, appellant's contention that the evidence is legally insufficient is not well taken.

■ In the third issue presented, appellant contends the trial court erred by admitting hearsay evidence that did not qualify as outcry testimony. The family code allows the admission of outcry testimony, as an exception to the hearsay rule, in the adjudication of delinquency for certain sexual or assaultive offenses committed against children who are twelve years old or younger. *See* TEX. FAM.CODE ANN. § 54.031(a) (Vernon 1996). The statute applies only to statements made (1) by the child who is the alleged victim of the violation and (2) to the first person, eighteen years old or older, to whom the child "made a statement" about the violation. *Id.* § 54.031(b). To qualify as admissible outcry testimony, a child's statement must "describe the alleged offense in some discernible manner and must be more than a general allusion to sexual abuse." *Sims v. State,* 12 S.W.3d 499, 500 (Tex.App.—Dallas 1999, pet. ref'd) (discussing outcry statements admissible under substantially similar provision in code of criminal procedure).

At trial, the State called the daycare director to testify. The director first testified, without objection, about the brother's initial allegation of sexual contact. The day after the initial statement, the daycare director called Child Protective Services. She took no more action, and the brother refused to talk to the police.

■ When the daycare director testified about the brother's second claim of sexual abuse, appellant objected that the daycare director was not the first person appellant's brother had told about the alleged sexual contact. After the defense attorney referred to an affidavit by the daycare director in which she said appellant's brother had told his mother about the alleged sexual contact, the trial judge placed the burden of proving non-compliance with the outcry statute on appellant. He instructed the defense, "To the extent that you are able to establish at some later point that this wasn't an outcry statement, that it wasn't a first statement made, then I will deal with that. And if I need to, I will disregard it." The State conceded that appellant's brother first had told his mother about the offense. The prosecutor, however, claimed the mother "did nothing about" the allegations and was "adverse to the State." The prosecutor argued, "Case law tells us that if that first person does not believe or does not take any action, ... then the outcry witness is the first person who does do something, and that is [the daycare director]." The State now argues on appeal that a different outcry witness may testify when the "original outcry witness is disqualified, unavailable, or has become adverse to the State's case." *See Foreman v. State,* 995 S.W.2d 854, 859 (Tex.App.—Austin 1999, pet. ref'd) (holding that "first person" means the first adult who can remember and relate the child's statement at trial in a discernible manner that describes the alleged offense); *Anderson v. State,* 831 S.W.2d 50, 53–54 (Tex.App.—Fort Worth 1992, pet. ref'd) (holding that the trial court did not abuse its discretion in finding that the mother of the complainant was not the outcry witness in the case because evidence showed she had denied the complainant had told her about any offense and she was a potential additional defendant for the offense).

Appellant clearly objected that the daycare director's testimony about her second conversation with appellant's brother was inadmissible because it did not meet the outcry exception to the hearsay rule. This timely objection preserved appellant's

complaint for appeal. *See* Tex.R.App. P. 33.1. The State, faced with appellant's timely objection and as the proponent of the hearsay evidence, had the burden of establishing compliance with the mandatory provisions of the outcry statute to render the testimony admissible. *See Hayden v. State*, 928 S.W.2d 229, 231 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd); *see also Long v. State*, 800 S.W.2d 545, 547 (Tex.Crim.App.1990). Even if we assume the State's characterization of the law is correct, it offered no evidence to meet this burden. Only after appellant's objection had been overruled did the State elicit testimony from the daycare director that she learned during the first allegation that the brother had told his mother about the sexual contact and she had done "nothing." Moreover, the fact that the mother failed to act is not evidence supporting the State's current claim that appellant's mother was disqualified, unavailable, or adverse to the State's case.

If the prosecutor intended her argument at trial to be an offer of proof, she needed to supplement it with a specific summary of the evidence showing the mother was an improper outcry witness. *See Warner v. State*, 969 S.W.2d 1, 2 (Tex.Crim.App. 1998). She did not do so. By failing to counter appellant's objection with evidence showing appellant's mother could not be the outcry witness, the State failed to meet its burden of establishing compliance with the outcry statute. In effect, the State failed to establish the daycare director was a qualified outcry witness. Therefore, the trial court erred by admitting the daycare director's hearsay testimony. We must now determine whether appellant was harmed by the error.

■ Improper admission of hearsay evidence is non-constitutional error. *See Couchman v. State*, 3 S.W.3d 155, 160 (Tex.App.—Fort Worth 1999, pet. ref'd); *see also Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998). Therefore, if the error did not affect appellant's substantial rights, it must be disregarded. *See* Tex.R.App. P. 44.2(b); *see also In re C.R.*, 995 S.W.2d 778, 785 (Tex.App.—Austin 1999, pet. denied). To make this determination, we must decide whether the error had a substantial or injurious effect on the trial court's finding. *See Morales v. State*, 32 S.W.3d 862, 867 (Tex.Crim.App. 2000). We must consider the entire record, including any testimony or physical evidence admitted for the fact finder's consideration, the nature of the evidence supporting the finding, the character of the alleged error, and how the alleged error might be considered in connection with other evidence in the case. *See id.*

■ The primary evidence supporting appellant's conviction consisted of his confession (which was the statement of a twelve-year-old boy who was questioned without a parent present) and the hearsay testimony of the daycare director. Although appellant's confession admitted he had engaged in sexual contact with his younger brother and felt bad about it, the daycare director's testimony about her second visit with appellant's brother is the only proof in the record showing the actual way appellant touched his brother, indicative of appellant's intent to arouse his sexual desire. The objected-to hearsay testimony also shows appellant's brother's shame over what occurred, which suggests that the touching was not merely incidental. Moreover, the testimony shows that the younger brother wanted to tell the police what had happened. In effect, the testimony admitted by the trial court significantly aided the State's case not only by graphically showing appellant's intent, but also by controverting appellant's brother's later claim at trial that appellant had not engaged in sexual contact with him.

We acknowledge that even if this evidence had been excluded, evidence of the brother's first allegation of sexual contact made to the daycare director still would have been before the fact finder. Thus, the evidence in the second statement that appellant was touching his brother's "privates" was made harmless by the same evidence in the first statement. *See Leday v. State*, 983 S.W.2d 713, 715–17 (Tex. Crim.App.1998). Nevertheless, the second statement contained probative evidence not contained in the first statement. Only the second hearsay statement revealed the manner of touching, where the touching occurred, and the fact that appellant's younger brother wanted to tell the police what had happened. The second hearsay statement provided the only fact in the record establishing an element of the offense—appellant's intent to arouse his sexual desire.[1] Because the erroneously admitted statement "covered different ground," the fact that the brother's earlier allegation made to the daycare director was admitted into evidence without objection does not render the entire statement harmless. *See Gay v. State*, 981 S.W.2d 864, 867 (Tex.App.—Houston [1st Dist.] 1998, pet. ref'd). We reject the dissent's characterization that the evidence admitted concerning the first conversation was substantially similar to the daycare center director's testimony, admitted over objection, concerning the second conversation.

We conclude the erroneous admission of the daycare director's testimony concerning the second statement by appellant's brother, which established appellant's intent to arouse his sexual desire, affected appellant's substantial rights. Therefore, we resolve appellant's third issue in his favor. Because of our disposition of the third issue, it is unnecessary for us to address the remaining issues.

We reverse the trial court's judgment and remand the case for a new trial.

Concurring and Dissenting Opinion By Justice FITZGERALD.

The evidence was legally sufficient to support the trial court's delinquency adjudication, and I therefore join that portion of this Court's opinion. The majority, however, reverses the trial court's judgment because of the admission of certain hearsay evidence that "did not meet the outcry exception to the hearsay rule." More specifically, the majority concludes the day care director was not the first person the complainant told about the sexual contact. I respectfully dissent.

The petition alleges that on or about April 15, 1999, appellant, a twelve-year-old child, intentionally or knowingly engaged in sexual contact with the child victim, the complainant, with the intent to arouse and gratify the sexual desires of appellant in violation of section 21.11 of the Texas Penal Code. The complainant was five years old. Following a trial before the court, the court found that appellant had engaged in delinquent conduct by committing the offense of "indecency with a child." Following the disposition hearing, the trial court, having considered "reports referred to in Section 54.04(b) of the Juvenile Justice Code and the testimony presented," found appellant in need of rehabilitation, and the public and appellant in need of protection. The trial court ordered appellant placed on probation for a period of two years in the custody of his grandfather,[1] payment of

---

[1]. Although the record also contained evidence that appellant engaged in some of the conduct hidden in a closet and he felt bad about it, these facts by themselves do not prove appellant's intent.

[1]. One condition of probation was that appellant was not to "associate in any way with [the complainant]; or any child his age or younger without adult supervision."

certain probation fees, performance of twenty-four hours of community service restitution, participation in certain sex offender counseling, and daily attendance at school. The trial court also instructed the parties as to the procedure to seal the files and records of a juvenile under section 58.003 of the Juvenile Justice Code.

## BACKGROUND

At trial, Gail Sullivan, the director of a daycare center, testified that on March 23, 1999, the complainant came to her in tears and reported that his brother, appellant, was "touching his privates and he wanted him to stop." Sullivan reported the conversation to Child Protective Services the next morning. A police detective, Bruce Marshall, visited the facility on April 12 and talked to the complainant but was unable to obtain any information from him because the child was scared. Two days later, a teacher came to Sullivan and said the complainant's behavior was disturbing. Sullivan asked the complainant to come to her office, and when he did so, she talked to him about his conduct. She testified that she asked the complainant why he was acting up, and he said, "[P]lease, I want [appellant] to stop." At this point in the proceedings, appellant objected to Sullivan testifying as an "outcry witness." The State represented to the court that the first person the complainant spoke to about this matter was his mother, who did nothing about it and is "adverse to the State." The trial court permitted Sullivan, over objection, to testify thereafter as follows:

He [the complainant] indicated that he [appellant] was touching his privates. At one point, I had asked him to show me on my hand how he was touching. And he rubbed up and down like this (indicating), and he said "this is what he's doing to my privates."

The complainant asked Sullivan to call the police because he wanted to talk to them.

Sullivan told him she would, and she left a message for Detective Marshall.

On April 15, 1999, appellant gave a written statement to Detective Marshall. This signed "Voluntary Statement of a Juvenile" stated:

I had touched my brother's private four or five times in the closet and in the living room. And I feel bad about what I have done to my brother, J_____ M_____. But I feel better now that I have told someone about this. This happened bettwen [sic] January to two weeks ago around April Fools Day. The way I was able to do this was I had pulled his pants down. And I'm sorry about my actions.

Although appellant did not testify on his own behalf, he called the complainant, who testified appellant did not do anything to him that he did not like. The complainant admitted telling Detective Marshall that appellant had touched his privates, but complainant said this statement was a lie.

Appellant's entire argument in his brief reads as follows:

The trial court permitted Ms. Gail Sullivan to testify as an outcry witness despite the appellant's objection. The outcry statute provides the outcry witness is the first person who is notified by the child of the alleged offense. In this case, [the complainant's] mother was the first person notified of the alleged offense. In fact, the State readily admitted that Ms. Sullivan was not the first person notified. Thus, based on the plain language of the statute, Ms. Sullivan should not have been permitted to testify as the outcry witness. Furthermore, from Ms. Sullivan's testimony, it appears that she was just given general information, rather than any specifics regarding an alleged offense. For this reason also she should not have been permitted to testify as an outcry wit-

ness. Based on the foregoing, it is clear that the trial court abused its discretion in permitting Ms. Sullivan to testify as an outcry witness. As such, this matter should be reversed.

Appellant, thus, argues Sullivan's testimony was not admissible as "outcry witness" evidence because Sullivan was not the "first person" to whom the child made the statement about the offense and because Sullivan was only given general information, and not specifics, about the alleged offense.

## OUTCRY TESTIMONY

Hearsay is not admissible except as provided by statute or by the rules of evidence. *See* TEX.R. EVID. 802; *Long v. State*, 800 S.W.2d 545, 547 (Tex.Crim.App. 1990). Statements made by a child abuse victim are an exception. TEX. FAM.CODE ANN. § 54.031 (Vernon 1996). This exception is known as the "child outcry exception." *Robinson v. State*, 985 S.W.2d 584, 586 (Tex.App.—Texarkana 1998, pet. ref'd).

The outcry witness exception under section 54.031 of the family code provides an exception to the rule against the admission of hearsay testimony for "statements that describe the alleged violation that: (1) were made by the child who is the alleged victim of the violation; and (2) were made to the first person, 18 years of age or older, to whom the child made a statement about the violation." TEX. FAM.CODE, § 54.031(b).

The child's statements must be more than a general allusion to sexual abuse; they must describe the alleged violation in some discernible manner. *See Rodriguez v. State*, 819 S.W.2d 871, 872 (Tex.Crim. App.1991); *Garcia v. State*, 792 S.W.2d 88, 91 (Tex.Crim.App.1990); *Thomas v. State*, 1 S.W.3d 138, 140–41 (Tex.App.—Texarkana 1999, pet. filed); *Foreman v. State*,

995 S.W.2d 854, 858–59 (Tex.App.—Austin 1999, pet. ref'd).

In *Ramirez v. State*, 967 S.W.2d 919, 922 (Tex.App.—Beaumont 1998, no pet.), the court held that a child described an unmistakable act of indecency when she told her mother that the appellant "was touching her in places that he shouldn't" and "was messing with her" by trying to touch her "top" or breasts. An analogous situation is found in *Gallegos v. State*, 918 S.W.2d 50, 54 (Tex.App.—Corpus Christi 1996, pet. ref'd), wherein the court held that when a child sufficiently communicated that the touching occurred to a part of the body within the definition of the statute, the evidence would be sufficient to support the conviction regardless of any unsophisticated language used by the child. *See Foreman v. State*, 995 S.W.2d at 858–59. In *Thomas*, 1 S.W.3d at 140, the child told the defendant's mother that appellant had touched her in "bad places" and on her "private parts" and told her not to tell. The victim later gave her own mother a far more detailed statement, which the trial court admitted into evidence. On appeal, the court held the defendant's mother was the proper outcry witness but concluded the error was harmless. *See id.* at 141–42.

In *Thomas*, the court emphasized that we are not to compare statements the child gave to different people and to decide which person received the most detailed statement about the offense. *See id.* at 141. Rather, the law "contemplates allowing the first person to whom the child described the offense in some discernible manner to testify about the statements the child made." *Id.* at 141; *see Broderick v. State*, 35 S.W.3d 67, 74 (Tex.App.—Texarkana 2000, no pet.).

The law also requires that the outcry witness be the "first person" to whom the complainant made the statements about the violation. There must be some evi-

dence that the child described to the person at least some of the details of the alleged abuse. *See Garcia,* 792 S.W.2d at 91; *Dorado v. State,* 824 S.W.2d 794, 795 (Tex.App.—El Paso), *vacated on other grounds,* 843 S.W.2d 37 (Tex.Crim.App. 1992); *Garibay v. State,* 787 S.W.2d 128, 130 (Tex.App.—Corpus Christi 1990, pet. ref'd). The court of criminal appeals opined that "first person" means the first one "to whom the child makes a statement that in some discernible manner describes the alleged offense." *Garcia,* 792 S.W.2d at 91.

The trial court has broad discretion in determining who is the outcry witness. Absent a clear abuse of discretion established by the record, the trial court's decision should not be disturbed. *See id.*

## PROCEDURAL DEFAULT

It is well settled that if an accused fails to object after a question has been asked and answered and no legitimate explanation is shown for the delay, any objection is untimely and error is waived. *Lagrone v. State,* 942 S.W.2d 602, 618 (Tex.Crim. App.1997); *Robinson,* 985 S.W.2d at 586. In *Leday v. State,* 983 S.W.2d 713 (Tex. Crim.App.1998), the court stated:

> Our rule, therefore, is that overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling. This rule applies whether the other evidence was introduced by the defendant or the State.

*Id.* at 718; *see Howland v. State,* 966 S.W.2d 98, 100 (Tex.App.—Houston [1st Dist.]1998), *aff'd,* 990 S.W.2d 274 (Tex. Crim.App.1999), *cert. denied,* 528 U.S. 887, 120 S.Ct. 207, 145 L.Ed.2d 174 (2000).

The record shows the complainant made the following statements to Sullivan:

- Appellant was "touching his privates and he wanted him to stop." (March statement)
- "He [the complainant] indicated that he [appellant] was touching his privates. At one point, I had asked him to show me on my hand how he was touching. And he rubbed up and down like this (indicating), and he said 'this is what he's doing to my privates.'" (April statement)

The contents of the March statement were admitted without objection through Sullivan.[2] The majority concedes, as it must, that this evidence would have remained before the fact finder even if the objection to the April statement had been sustained.

The majority goes further and concedes that any evidence that was contained in *both* statements cannot support a finding of harmful error. However, the majority's interpretation of what information was contained in both of the statements is unnecessarily restrictive. On both occasions, the complainant said appellant touched his "privates." During the second conversation, the complainant showed how it was done. The presence of this small amount of additional detail in the April statement is a distinction in amount, but not in kind. The statements are substantially the same for purposes of this trial. Once Sullivan testified without objection about the March statement, the overruling of a later objection to the admission of the April statement should not result in reversal because substantially similar evidence had already been admitted. *Leday,* 983 S.W.2d at 718.

## THE COURT'S APPLICATION OF THE OUTCRY STATUTE

The majority holds: (1) that the April statement, not being made to the "first person" the complainant talked to about

---

**2.** The contents of the March statement were also admitted—without objection—when the complainant testified he told Detective Marshall appellant touched his privates.

the offense, was inadmissible; and (2) that admission of the April statement affected appellant's substantial rights and is thus cause for reversal. I disagree with both conclusions.

## "First Person"

The majority sustains appellant's contention that Sullivan was not the "first person" the complainant told and therefore concludes the April statement was not "outcry testimony" and should have been excluded.

Appellant points to Sullivan's April 15 affidavit [3] in which she said the complainant told her he had told his mother about some alleged violations. Appellant argued in the trial court the complainant had told his mother about the touching before he told Sullivan and, therefore, his mother was the "first person ... to whom the child made a statement about the violation." TEX. FAM.CODE, § 54.031(b)(2). The trial court stated it was overruling the objection "at this point," but to the extent appellant could establish at some later point this was not an "outcry statement" or was not a "first statement made," the court would "deal with that." The prosecutor made the following representation to the trial court:

> The first person he told was his mother, who did nothing about it and who is adverse to the State as we stand here today. Case law tells us that if that first person does not believe or does not take any action, Judge, then the outcry witness is the first person who does do something, and that is Ms. Sullivan.

This Court states there is no evidence in the record to support the prosecutor's statement that the complainant's mother was adverse to the State and no offer of proof was made. First, I believe this situation falls within the often-cited rule that

an appellate court "accepts as true factual assertions made by counsel which are not disputed by opposing counsel." *See Sanford v. State,* 21 S.W.3d 337, 341 n. 3 (Tex.App.—El Paso 2000, no pet.); *see also Pitts v. State,* 916 S.W.2d 507, 510 (Tex.Crim.App.1996); *Emerson v. State,* 820 S.W.2d 802, 804 (Tex.Crim.App.1991); *Canada v. State,* 660 S.W.2d 528, 530 (Tex. Crim.App.1983). Appellant never contested the prosecutor's assertions in the trial court.

Regardless, the record *does* contain evidence supporting the prosecutor's statement to the trial court. Sullivan's testimony shows that during her March conversation with the complainant, she asked if he had told his mother. The complainant said he had told his mother and that she had done "nothing." Sullivan subsequently contacted Child Protective Services, *not* the mother, to address the complainant's concerns. Thus, evidence supports the reasonable inference that the mother's position was, at a minimum, not protective of the complainant. The State should not be required to call an adverse witness to prove outcry, but should instead be permitted to call the first adult to whom the child spoke who can and will testify to the child's description of the offense. *See Foreman,* 995 S.W.2d at 859. *But cf. Bermudez v. State,* 878 S.W.2d 227, 229 (Tex. App.—Corpus Christi 1994, no pet.) (State called child's mother as hostile witness to testify to child's statements to her).

What is *not* in the record is evidence indicating the extent of the complainant's conversation with his mother. Although his mother may technically have been the "first person" the complainant spoke to about the matter, there is no evidence the complainant described any of the details of the alleged abuse to his mother. *See Gar-*

---

**3.** The affidavit was never offered into evidence and is not in the record before us.

*cia,* 792 S.W.2d at 91; *Dorado,* 824 S.W.2d at 795; *Garibay,* 787 S.W.2d at 130. In this respect, the majority's reliance upon *Hayden v. State,* 928 S.W.2d 229 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (citing *Long,* 800 S.W.2d at 547) is misplaced. *Hayden* presents a factual scenario quite similar to the instant case, in that the evidence showed the complainant told a school counselor about the sexual abuse before she told the Child Protective Services caseworker who testified as an outcry witness. *See id.* at 230–31. As in this case, the record in *Hayden* failed to show the extent of the complainant's conversation with the school counselor. *See id.* at 231. The court of appeals held the trial court did not abuse its discretion by allowing the caseworker to testify, because there was no evidence the complainant described the details of the alleged abuse to the school counselor. *See id.* at 231. The court also emphasized that appellant had the burden to bring forth an adequate record to demonstrate error. `Hayden,* therefore, constitutes authority supporting the exercise of the trial court's discretion in permitting Sullivan to testify as the outcry witness.[4]

I am not persuaded this record shows the trial court abused its discretion in admitting Sullivan's testimony as the effective "first person" told of complainant's abuse.

### Harm Analysis

We should not reverse unless we can conclude that the error complained of affected a substantial right of the appellant. *See* TEX.R.APP. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the verdict. *See King v. State,* 953 S.W.2d 266, 271 (Tex.Crim. App.1997). In *Broderick,* the court stated:

> The admission of inadmissible hearsay constitutes nonconstitutional error, and it will be considered harmless if the appellate court, after examining the record as a whole, is reasonably assured that the error did not influence the jury verdict or had but a slight effect. Likewise, improper admission of evidence is not reversible error if the same or similar evidence is admitted without objection at another point in the trial.

*Broderick,* 35 S.W.3d at 74 (citation omitted).

In conducting this harm analysis, we must narrowly confine our review to the following portion [5] of the April statement:

> At one point, I had asked him to show me on my hand how he was touching. And he rubbed up and down like this (indicating), and he said "this is what he's doing to my privates."

(Emphasis added.)

This Court asserts this statement describing appellant's hand strokes was the only evidence showing where the touching occurred, the manner of touching, and the fact that the complainant wanted to tell the police what had happened, and was the only proof of appellant's intent to arouse his sexual desire. It, thus, "covered different ground" from other evidence at trial.[6]

---

**4.** *Warner v. State,* 969 S.W.2d 1 (Tex.Crim. App.1998), cited by the majority, is also distinguishable, because *Warner* involved only the predicate necessary to preserve error when evidence was excluded, not when it was admitted. *See id.* at 2.

**5.** The first sentence of the statement reads: He [the complainant] indicated that he [appellant] was touching his privates. It was

admitted into evidence twice without objection and therefore is excluded from this analysis.

**6.** The majority relies upon *Gay v. State,* 981 S.W.2d 864 (Tex.App.—Houston [1st Dist.] 1998, pet. ref'd). In *Gay,* the appellant complained the State's written summary required to be given under article 38.072, section 2, did not give him fair notice of the content and

The record does not support this conclusion. Sullivan and a police officer testified the complainant said appellant touched his "privates." Appellant's confession states he touched the complainant's privates "four or five times in the closet and in the living room." Thus, the facts show *where* the touching occurred.

The complainant wanted appellant to stop this touching. The touching was, therefore, not invited or welcome. Appellant perpetrated these acts numerous times in different areas of the house, including a closet, by pulling down the complainant's pants. Appellant admitted in his confession he felt "bad about what [he had] done" and was "sorry about [his] actions," which demonstrates the manner of touching was entirely intentional and deliberate. Nothing in the record suggests the touching was merely incidental. It is telling that, at trial, appellant challenged whether the touching ever occurred, not whether it was incidental or whether appellant's intent was to arouse his sexual desire. The trial court could reasonably infer the *manner of touching.*

The facts show the complainant voluntarily reported appellant's sexual misconduct to Sullivan in March but apparently was reluctant to share this information with the police the first time. However, in April, the complainant voluntarily shared the same information with both Sullivan and the police. Thus, because the complainant willingly reported the facts to the

police, we know the complainant *wanted* to tell the police what had happened.

The police officer testified the complainant said appellant touched his privates; the complainant admitted he told the police officer appellant touched his privates; and appellant wrote a statement freely reciting the circumstances and the number of times he touched the complainant's privates. This evidence controverted the complainant's recantation at trial and clearly showed appellant's intent to arouse his sexual desire. Under these circumstances, Sullivan's testimony about the hand strokes added remarkably little to the substantial evidence already before the trial court. The State never referred to the evidence about the hand strokes again during the trial, including final summations.[7] Thus, "error," if any, was harmless. *See Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998); *Thomas,* 1 S.W.3d at 142.

For all the reasons contained herein, I respectfully dissent from the opinion reversing the adjudication of delinquency.

scope of the outcry testimony. *See Gay,* 981 S.W.2d at 866. The summary stated only that the appellant had "kissed and touched" the complainant; it did not say the appellant had "bothered" her, made her touch him, or threatened her. *See id.* The court held the appellant did not receive a sufficient summary of the outcry statement and that certain unobjected-to testimony did not convey the

same information the outcry witness stated in her testimony. *See id.* at 867. Thus, the outcry witness's testimony covered "different ground." *Id. Gay* is distinguishable on its facts.

7. The State made no final summation; thus, this particular evidence was not emphasized.