**In the Matter of B. M., A Juvenile.**

No. 12–98–00311–CV.

Court of Appeals of Texas,
Tyler.

July 30, 1999.

Corey Bankhead, Carthage, for appellant.

Dana Whitmer, Carthage, for appellee.

Panel consists of RAMEY, Jr., C.J., HADDEN, J., and WORTHEN, J.

HADDEN, Justice.

B.M.,[1] a juvenile, appeals from the trial court's adjudication that he engaged in delinquent conduct and the disposition placing him on probation for one year. B.M. challenges the sufficiency of the evidence to support the trial court's findings at both the adjudication and disposition phases of the juvenile proceeding. We will affirm.

### FACTUAL BACKGROUND

On the morning of August 26, 1998, B.M. was a ninth grade student at Carthage High School. He violated the school dress code when he went to school with a red rag in the back pocket of his pants. School Disciplinary Supervisor Charles

Lefall ("Lefall") stopped B.M. and asked him for the rag, and B.M. turned over the rag to Lefall. During the lunch break, Lefall encountered B.M. twice, and on both occasions, B.M. asked Lefall to return his rag, but Lefall refused. At the adjudication hearing, Lefall testified that the following conversation took place between himself and B.M. after his second refusal to return the rag:

B.M.: Well, I want my towel.

LEFALL: Well, I told you I'm not going to give it to you.

B.M.: Man, I want my towel.

LEFALL: I told you I am not going to give it to you.

B.M.: Well, I tell you what, I guess I'll just have to get my gun then.

LEFALL: Do what?

B.M.: I'll just get my gun.

LEFALL: What do you plan on doing with it?

B.M.: Well, I'll shoot you.

LEFALL: *Well, I hope you don't miss.*

B.M.: *I won't miss.*[2]

In its Original Adjudication Petition, the State alleged that B.M. had engaged in delinquent conduct in that he did then and there intentionally and knowingly threaten to harm Charles Lefall by an unlawful act, to-wit: shooting him with a gun, in retaliation for or on account of the service of Charles Lefall as a public servant.

On September 14, 1998, the trial court conducted adjudication and disposition hearings in this matter. The court filed written findings of fact which included the following:

4. On or about the 26th day of August, 1996, B.M. engaged in delinquent conduct as defined by Texas Family Code § 51.03(a)(1);

1. This opinion identifies the juvenile Appellant only by his initials, B.M. *See* TEX. FAM. CODE ANN. § 56.01(j) (Vernon 1996).

2. Lefall testified at both the detention and adjudication hearings. His testimony at the two proceedings was substantially similar. However, the italicized portion was included in the detention hearing testimony only.

5. On or about the 26th day of August, 1996, B.M. committed the offense of Retaliation in violation of Texas Penal Code § 36.06(a)(1)(A);

6. B.M. is in need of rehabilitation;

7. The public is in need of protection from B.M.;

8. B.M. cannot be provided the quality of care and level of support and supervision that he needs to meet the conditions of probation in his home.

At the conclusion of the disposition hearing, the court placed B.M. on probation for a period of one year, including a 90 day boot camp and a 90 day period of intensive supervision probation following boot camp.

### THE ADJUDICATION HEARING

In his first and second points of error, B.M. contends that the evidence was legally and factually insufficient to support the trial court's finding that he had engaged in delinquent conduct. Specifically, B.M. asserts that the evidence offered at his adjudication hearing did not establish the elements of retaliation, but at most constituted proof of assault, a Class C misdemeanor as set forth in Texas Penal Code § 22.01(c). We disagree.

### 1. Standard of Review

In a bench trial, findings of fact are of the same force and dignity as a jury's verdict. *In the Matter of T.D.*, 817 S.W.2d 771, 777 (Tex.App.—Houston [1st Dist.] 1991, writ denied). An appellate court reviews those findings for legal and factual

sufficiency by the same standards applied to reviewing evidence in support of a jury's verdict. *Id.* The Texas Rules of Civil Procedure govern juvenile proceedings, except to the extent that those rules conflict with the Juvenile Justice Code. TEX. FAM.CODE ANN. § 51.17(a) (Vernon 1996). However, the State must prove beyond a reasonable doubt that a child has committed an offense and thereby engaged in delinquent conduct. TEX. FAM.CODE ANN. § 54.03(f) (Vernon 1996). Therefore, when reviewing the evidence in a juvenile proceeding, an appellate court applies, not the civil "no evidence" standard of review, but the more stringent legal sufficiency standard as set forth in *Jackson v. Virginia*, 443 U.S. 307, 320, 99 S.Ct. 2781, 2789–90, 61 L.Ed.2d 560 (1979); *R.X.F. v. State*, 921 S.W.2d 888, 899 (Tex.App.—Waco 1996, no writ).[3]

The standard for reviewing the legal sufficiency of the evidence is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Commonwealth of Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.E.2d 560 (1979). *See also Richardson v. State*, 879 S.W.2d 874, 879 (Tex. Cr.App.1993), *cert. denied*, 513 U.S. 1085, 115 S.Ct. 741, 130 L.Ed.2d 643 (1995). In a bench trial, the judge, as trier of fact, determines the credibility of the witnesses and can believe or reject all or any part of the testimony. *In the Matter of C.D.F. v. State*, 852 S.W.2d 281 (Tex.App.—Dallas 1993, no writ). In reviewing a factual sufficiency challenge, the appellate court reviews all of the evidence impartially and

**3.** Historically, Texas intermediate appellate courts have applied the civil "no evidence" standard in reviewing challenges to the legal sufficiency of the evidence in juvenile matters. *See, e.g., In the Matter of M.M.R.*, 932 S.W.2d 112, 113 (Tex.App.—El Paso 1996, no writ); *In the Matter of S.A.M.*, 933 S.W.2d 744, 745 (Tex.App.—San Antonio 1996, no writ). Recently, however, the Waco and El Paso courts have published well-reasoned opinions which specifically rejected the civil "no evidence" standard as not providing constitutionally sufficient review of the evidence in light of the

State's burden of proof beyond a reasonable doubt. *In the Matter of A.S.*, 954 S.W.2d 855, 858 (Tex.App.—El Paso 1997, no pet.); *R.X.F. v. State*, 921 S.W.2d 888, 899 (Tex.App.—Waco 1996, no writ); *see also In the Matter of C.D.F. v. State*, 852 S.W.2d 281, 283–84 (Tex. App.—Dallas 1993, no writ). We join the El Paso, Waco, and Dallas courts in applying the *Jackson v. Virginia* standard of legal sufficiency to the determination of whether a juvenile has committed a criminal offense beyond a reasonable doubt.

sets aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *In the Matter of A.S.*, 954 S.W.2d 855, 860 (Tex.App.—El Paso 1997, no pet.); *R.X.F.*, 921 S.W.2d at 900.

### 2. Applicable Law

■ Delinquent conduct is "conduct, other than a traffic offense, that violates a penal law of this state or of the United States punishable by imprisonment or by confinement in jail." TEX. FAM.CODE ANN. § 51.03(a)(1) (Vernon 1996 & Supp.1999). The offense of retaliation is a third degree felony and is punishable by imprisonment. TEX. PEN.CODE ANN. §§ 12.34(a), 36.06(c) (Vernon 1994). A person commits the offense of retaliation if he intentionally or knowingly harms or threatens to harm another by an unlawful act in retaliation for or on account of the service of another as a public servant, witness, prospective witness, or informant. TEX. PEN.CODE ANN. § 36.06(a)(1)(A) (Vernon Supp.1999). Public servants, as defined by the Penal Code, include employees of independent school districts. TEX. PEN.CODE ANN. § 1.07(24), (41) (Vernon 1994); *see also Powell v. State*, 549 S.W.2d 398, 399 (Tex.Cr.App. 1977). The retaliation statute's purpose is not limited to a reduction in the number of killings, but also to encourage "a certain class of citizens to perform vital public duties without fear of retribution." *Doyle v. State*, 661 S.W.2d 726, 728 (Tex.Cr.App. 1983); *see also Puckett v. State*, 801 S.W.2d 188, 194 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd), *cert. denied*, 502 U.S. 990, 112 S.Ct. 606, 116 L.Ed.2d 629 (1991). The statute does not require that the threatened retaliatory harm be imminent, nor does it require that the actor actually intend to carry out his threat. *Coward v. State*, 931 S.W.2d 386, 389 (Tex. App.—Houston [14th Dist.] 1996, no pet.); *Puckett*, 801 S.W.2d at 194.

■ Taking into consideration all of the evidence in light of the *Jackson v. Virgi-* nia standard, a rational trier of fact could have found that B.M. committed the offense of retaliation beyond a reasonable doubt. The State was required to prove that B.M. intentionally and knowingly threatened to shoot Lefall on account of his service as a public servant. B.M. repeatedly asked Lefall to return his rag, and Lefall refused. Because of the refusal, B.M. threatened to get a gun and shoot Lefall. As an employee of Carthage Independent School District, Lefall enjoyed the status of "public servant" in accordance with the Penal Code definition. There was sufficient evidence from which the trial court, as trier of fact, could find that B.M. threatened to harm Lefall on account of his public service.

In his brief, B.M. argues that his actions constituted misdemeanor assault, but not retaliation. We disagree for two reasons. First, misdemeanor assault requires that the actor threaten another with *imminent* bodily injury. *See* TEX. PEN.CODE ANN. § 22.01(a)(3) (Vernon 1994) (emphasis added). There was no proof that B.M.'s threat to harm Lefall was imminent. Second, B.M.'s characterization of the incident as mere assault ignores the public servant status of the victim. It is clear that the Legislature intended to protect public servants from retaliation for the exercise of their duties. We therefore hold that the trial court did not err in finding that B.M. had engaged in delinquent conduct and overrule his first point.

Viewing the evidence impartially, it appears that there was, likewise, factually sufficient evidence to support the trial court's ruling. In his brief, B.M. argues that his conversation with Lefall was merely "playful banter," and not meant to be taken seriously. The only evidence that tends to support this allegation is B.M.'s mother's testimony at his detention hearing, where she stated, "I think he was just mouthing off because he doesn't own a gun."[4] After considering this evidence,

4. At the detention hearing, the court com- mented on B.M.'s allegation that he was

we do not consider the court's finding to be so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We overrule point two.

In his third point of error, B.M. contends that the trial court abused its discretion by finding that he committed the offense of retaliation. As discussed in points one and two, there was sufficient evidence to support the trial court's finding that B.M. committed retaliation against Lefall. At the conclusion of the adjudication hearing, the court was required to consider the competent evidence and find whether the child had engaged in delinquent conduct. *See* TEX. FAM.CODE ANN. § 54.03(f) (Vernon 1996). Because the court made findings in accordance with the evidence, we will not reevaluate its decision under an abuse of discretion standard.

■ B.M. also suggests that the court abused its discretion by making only conclusions of law, without findings of fact. B.M. cites no authority and makes no argument regarding this allegation, as required by the appellate rules. *See* TEX. R.APP. P. 38.1(h). However, in the interest of justice, we will attempt to address his contention.

The court made eight findings of fact and two conclusions of law. The second conclusion of law states, "any finding of fact that amounts to a conclusion of law shall be deemed a conclusion of law." While we agree with B.M. that the court's factual findings four and five are more properly conclusions, we do not find that the absence of true findings prejudiced him.

An appellant suffers harm from the absence of findings when he must guess the reasons that the judge has ruled against him. *In the Matter of O.L.*, 834 S.W.2d 415, 418 (Tex.App.—Corpus Christi 1992, no writ). The appellate court should consider whether the appellant was prevented from making a proper presentation of the issues in the case. *Id.* Further, a finding that a juvenile violated any penal law of this state that is punishable by imprisonment or confinement in jail is sufficient to support an adjudication of delinquency. TEX. FAM.CODE ANN. § 51.03(a) (Vernon 1996 & Supp.1999); *O.L.*, 834 S.W.2d at 418.

The trial court found that B.M. had committed the offense of retaliation in violation of Texas Penal Code § 36.06(a)(1)(A). While the court did not make findings on each of the elements that comprise the offense, the findings were not so inadequate that B.M. was required to guess the reason that the court found that he had committed the offense. The State's petition, as discussed above, alleged that B.M.'s violation of the retaliation statute arose out of one specific conversation between himself and Lefall. Further, the State proved each allegation contained in the petition. We hold that the trial court did not act arbitrarily or without reference to guiding rules and principles in finding that B.M. committed the offense of retaliation. We overrule point three.

### THE DISPOSITION HEARING

■ In his fourth and fifth points of error, B.M. contends that the evidence was both legally and factually insufficient to support the trial court's findings that he was in need of rehabilitation (finding 6) and the public in need of protection from him (finding 7). In support of this contention, B.M. alleges that the court "received no evidence, legal or factual on whether Appellant [B.M.] is in need of rehabilitation or the protection of the public or Appellant requires that a disposition be made." In support of the trial court's finding, the State points to the disposition hearing testimony of Alan Moon ("Moon"),

merely mouthing off: "Threats to take guns to school, threats to shoot people at school, threats to shoot school personnel are absolutely deadly serious. They are not joking

matters. They are not mouthing off. They are crimes, and I'm going to treat them as such."

B.M.'s probation officer. He stated that he had supervised B.M. as a probationer for approximately 25 months. Appellant had previously been adjudicated to have engaged in delinquent conduct, specifically, Class B misdemeanor theft. Additionally, the court had recently placed B.M. on deferred adjudication supervision for evading arrest, also a Class B misdemeanor. Moon stated, "I've worked with [B.M.] on deferred prosecution. I've worked with [B.M.] on court ordered adjudication and now he's back in my office again. I feel that additional steps need to be taken to prevent further delinquent conduct in the future."

The evidence was legally and factually sufficient to support the court's findings that B.M. was in need of rehabilitation and that the public was in need of protection from B.M. He had engaged in delinquent conduct three times, and in threatening Lefall, had committed a more serious offense: he had progressed from misdemeanors to a third degree felony and from a non-violent crime to a violent crime. From Moon's evidence, the court could find that B.M. was in need of rehabilitation and the public in need of protection from him. We overrule B.M.'s fourth and fifth points of error.

In his sixth and final point, B.M. asserts that the trial court abused its discretion by finding that he was in need of rehabilitation and the public or Appellant is in need of protection. As discussed above, there was legally and factually sufficient evidence to support findings 6 and 7. Therefore, we will not reevaluate that question under an abuse of discretion standard.

[redacted] Although not specifically addressed in his point, B.M. also avers that the court also abused its discretion in committing him to 90 days of boot camp. We disagree.

[redacted] A juvenile judge has broad discretion to determine a suitable disposition of a child who has been adjudicated to have engaged in delinquent conduct. *In re T.A.F.*, 977 S.W.2d 386, 387 (Tex.App.—San Antonio 1998, no pet.); *A.S.*, 954 S.W.2d at 861. Absent an abuse of discretion, an appellate court will not disturb the juvenile court's findings. *Id.* However, a trial court may not make a disposition placing a juvenile outside of his home unless the court finds that the child cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation in his home. TEX. FAM.CODE ANN. § 54.04(c) (Vernon 1996).

In the instant case, the trial court made the necessary finding to place B.M. outside of his home. Further, the evidence of B.M.'s two previous periods of probation supported that finding. We hold that the trial court did not abuse its discretion in ordering that B.M. attend boot camp and overrule his sixth point of error.

The judgment is ***affirmed.***