TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-02-00112-CV







In the Matter of J. A. P.








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT

NO. J-21,371, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING






 The State filed a petition alleging that appellant J.A.P. had engaged in delinquent
conduct by committing aggravated assault against a friend and fellow classmate during a break
between their eighth grade summer school classes. See Tex. Pen. Code Ann. § 22.02 (West Supp.
2002). The juvenile court found beyond a reasonable doubt that the State's allegations were true. 
J.A.P. was adjudicated to have engaged in delinquent conduct by knowingly, intentionally, and
recklessly causing serious bodily injury to the complainant by choking him. After a disposition
hearing, the court placed J.A.P. on probation in his mother's care for six months. J.A.P. appeals,
contending the evidence is insufficient to support the trial court's ruling. We will affirm the
judgment.

 In June 2001, J.A.P. was attending summer school classes at Crockett High School. 
During a break, a group of friends, including J.A.P. and the complainant, gathered in the courtyard
to talk and "mess around." The complainant testified that J.A.P. approached him and said: "Let me
show you a trick." Before the complainant responded, J.A.P. grabbed him around the neck and
proceeded to choke him for about seven seconds, whereupon the complainant lost consciousness and
collapsed onto the concrete surface of the courtyard. The complainant testified that he had not
consented to the choking, and that in fact he would never consent to being grabbed by the neck
because he had always been sensitive about his neck. The complainant also testified that while he
did not lift his hands to grab J.A.P.'s arms, he struggled by moving side to side and by trying to put
his head down. When the complainant recovered and stood up, his face was bloody from lacerations. 
J.A.P. and two other friends accompanied the complainant to the restroom to help him clean up. 
There, the complainant discovered that he had chipped four teeth.

 On his way back to class, the complainant encountered his teacher, Beverly May, who
had been notified of the incident by a student. She escorted him to the office of the assistant
principal, where the complainant telephoned his mother and notified her of what he referred to at the
time as an "accident." Neither the teacher nor the assistant principal reported the incident to law
enforcement authorities. The complainant's father picked him up from school and took him home. 
The complainant's mother, upset about the injuries, filed a report with the police. Officer Fischetti
questioned the complainant about the incident and concluded that delinquent conduct had occurred. 
On the following day, the complainant saw a dentist about the chipped teeth. One tooth required an
emergency root canal. By the time of the adjudication hearing, the facial lacerations and other
injuries the complainant had sustained had healed. However, the complainant testified that he
suffered psychological trauma in the form of fear and nightmares. 

 The district court found that, although the complainant never consented to being
choked, he may have consented to playing a game called "passout," the object of which is for one
person to cause the other person to lapse into unconsciousness. According to the testimony of J.A.P.
and the two friends who witnessed the incident, the complainant agreed to let J.A.P. cause him to
pass out. J.A.P. testified that the complainant asked J.A.P. to make him pass out by holding him
from the back, grabbing him around the chest, and squeezing him in a bearhug. J.A.P. also testified
that because he did not know how to play "passout" in that manner, he decided instead to grab the
complainant by the neck. In its oral ruling, the district court observed that if the complainant
consented to anything, it "was a big bear hug from behind. He did not give effective consent to
choking pressure applied to the throat from the front. The Court finds that [J.A.P.] did not have a
reasonable belief that [the complainant] consented to anything other than a big bear hug from
behind." 

 We review adjudications of delinquent conduct in juvenile proceedings under the same
standards of review we use to review the sufficiency of the evidence supporting a jury's verdict in a
criminal case. See In re L.M., 993 S.W.2d 276, 284 (Tex. App.--Austin 1999, pet. denied); see also
In re B.M., 1 S.W.3d 204, 206 (Tex. App.--Tyler 1999, no pet.). To evaluate the legal sufficiency
of the evidence, we view all of the evidence in the light most favorable to the verdict and determine
whether any rational trier of fact could have found the elements of the offense beyond a reasonable
doubt. See Jackson v. Virginia, 443 U.S. 307 (1979); In re J.L.H., 58 S.W.3d 242, 244-45 (Tex.
App.--El Paso 2001, no pet.); L.M., 993 S.W.2d at 284; see also Tex. Fam. Code Ann. § 54.03(f)
(West Supp. 2002); B.M., 1 S.W.3d at 206. A trial court's findings of fact entered after a bench trial
have the same force and dignity as a jury's verdict. B.M., 1 S.W.3d at 206; In re T.D., 817 S.W.2d
771, 777 (Tex. App.--Houston [1st Dist.] 1991, writ denied). 

 J.A.P. first contends that the evidence is legally insufficient to show he knowingly,
intentionally, or recklessly caused serious bodily injury to the complainant. A person commits assault
if the actor intentionally, knowingly, or recklessly causes bodily injury to another. Tex. Pen. Code
Ann. § 22.01(a) (West Supp. 2002). Assault is elevated to aggravated assault if the person commits
assault as defined in Section 22.01 and in the course of the assault the person causes "serious bodily
injury" to another. Id. § 22.02(a)(1). To be guilty of an offense, a person must act with the requisite
culpable mental state. Id. § 6.02(a). A person acts intentionally who consciously desires to engage
in the illegal conduct or cause the result. Id. § 6.03(a); Beltran v. State, 593 S.W.2d 688, 689 (Tex.
Crim. App. 1980); Brooks v. State, 967 S.W.2d 946, 948 (Tex. App.--Austin 1998, no pet.). A
person acts knowingly when the actor is aware of the nature of the conduct or that the conduct is
reasonably certain to cause the result. Tex. Pen. Code Ann. § 6.03(b) (West 1994). A person acts
recklessly when the actor is aware of but consciously disregards a substantial and unjustifiable risk
that the result will occur. Id. § 6.03(c); Navarro v. State, 863 S.W.2d 191, 205 (Tex. App.--Austin
1993), pet. ref'd, 891 S.W.2d 648 (Tex. Crim. App. 1994). 

 The offense of aggravated assault is a result oriented offense. Thus, the appellant's
mental state must be directed to the result of the conduct. See, e.g., Mena v. State, 749 S.W.2d 643,
645 (Tex. App.--San Antonio 1988, pet. ref'd). The State must not only prove that J.A.P.
intentionally, knowingly, or recklessly choked the complainant, but also that he intentionally,
knowingly, or recklessly caused the complainant serious bodily injury. As the State acknowledged
at oral argument, the record contains little support for finding that J.A.P. intentionally or knowingly
caused the complainant serious bodily injury by choking him. Therefore, we will consider whether
the evidence supports a finding that J.A.P. recklessly caused the complainant serious bodily injury. 
 J.A.P. argues that the evidence proves at most that he acted with criminal negligence. 
We disagree. A person acts with criminal negligence "with respect to circumstances surrounding his
conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk
that the circumstances exist or the result will occur." Tex. Pen. Code Ann. § 6.03(d) (West 1994). 
Here, viewed in the light most favorable to the prosecution, J.A.P.'s own testimony shows not only
that he should have been aware but that in fact he was aware of the substantial risk that would occur
from choking the complainant: 



 Choking somebody, is that dangerous?



 Yes.



 How do you know it's dangerous? Have you ever seen it done before?



 No. But--well, choking period could be dangerous. (1)



 J.A.P. testified that it was his idea to play "passout" by choking the complainant from
the front and that he disregarded the consequences of this action:



 Now, did y'all think about--if--if he passed out, did y'all talk about what
would happen?




 No.




 Did you think about him hitting the ground?




 No.




 Did you think he might hit the ground if he passed out?




 Well, he did, you know.




 You didn't try to catch him? Or you didn't think--




 No.




 You didn't plan on catching him?




 No.




 So you just weren't really thinking that day, were you?




 At the time, you don't really--just going along with it. I don't know.




 So you don't think that was reckless? Have you learned anything from this?




 Yeah.




 What did you--what have you learned from what happened to [the
complainant]?




 Shouldn't be goofing off like that.




The evidence shows that J.A.P. understood but disregarded the dangers associated with playing the
game of "passout" by choking and further disregarded the risk that choking the complainant would
cause him to lose consciousness and collapse face-first into concrete, resulting in lacerations and
chipped teeth. We hold that the evidence is legally sufficient to prove that J.A.P. recklessly
committed the charged offense. (2) We therefore overrule J.A.P.'s first issue on appeal.

 J.A.P. next contends that the evidence is legally insufficient to prove the complainant
suffered serious bodily injury. Serious bodily injury is defined as "injury that creates a substantial
risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment
of the function of any bodily member or organ." Tex. Pen. Code Ann. § 1.07(a)(46) (West 1994). 
In determining whether the evidence supports a finding of serious bodily injury, the relevant issue
is the quality of the injury as it was inflicted, not after the effects are ameliorated by medical
treatment. See Brown v. State, 605 S.W.2d 572, 575 (Tex. Crim. App. 1980); Boney v. State, 572
S.W.2d 529, 531-32 (Tex. Crim. App. 1978). Therefore, our analysis cannot turn on the fact that
the complainant lost consciousness for only a few seconds, that his wounds healed, or that his tooth
was saved by an emergency root canal.

 Nor is expert medical testimony required to show that choking causes a substantial
risk of death, as appellant argues. In Akbar v. State, 660 S.W.2d 834 (Tex. App.--Eastland 1983,
writ ref'd), an aggravated assault conviction was upheld where the victim was strangled nearly to
the point of passing out. There the court acknowledged the particular vulnerability of the throat, and
then concluded: "From the evidence in the instant case since the victim was strangled to the point
of 'near blackout,' we hold that the jury could draw the inference that her injuries created a
substantial risk of death." Akbar, 660 S.W.2d at 836. Here, the complainant did in fact blackout. 
The two eighth grade students who witnessed the event testified that they knew choking could lead
to death; J.A.P.'s own testimony showed that he knew generally that choking someone is a
dangerous activity. We do not believe expert medical evidence was necessary to educate the district
court on such an obvious danger. Viewing the evidence in the light most favorable to the
prosecution, we hold that any rational trier of fact could have found beyond a reasonable doubt that
J.A.P.'s act of choking the complainant created a substantial risk of death. See Jackson v. Virginia,
443 U.S. 307 (1979); Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App. 1991). Because this finding
alone is enough to satisfy the element of "serious bodily injury," we overrule J.A.P.'s second issue. (3)

 J.A.P. finally contends that the evidence produced at the hearing was factually
insufficient to prove the complainant did not consent to the choking. Under the Penal Code, a
victim's effective consent or an actor's reasonable belief that the victim consented to the conduct
constitutes a defense to aggravated assault. Tex. Pen. Code Ann. § 22.06 (West 1994). However,
as appellant acknowledges, consent operates as a defense only if "the conduct did not threaten or
inflict serious bodily injury." Id. § 22.06(1). Because we hold that a rational trier of fact could have
found beyond a reasonable doubt that J.A.P.'s act of choking the complainant created a substantial
risk of death, this conduct threatened serious bodily injury and therefore negates the defense of
consent. We overrule J.A.P.'s third issue. 

 Having overruled J.A.P.'s issues on appeal, we affirm the judgment.



 ___________________________________________

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Patterson and Puryear

Affirmed

Filed: October 17, 2002

Do Not Publish
1. The two students who witnessed the event also testified that they were aware of the
inherent dangers of choking another individual. One testified that choking somebody was "dumb"
because "choking could lead to death." The other testified that choking was dangerous because "if
you get choked" there existed the risk that "you could suffocate and probably even die." 
2. According to the district court, J.A.P.'s conduct warranted punishment in part because his
testimony suggested an apparent lack of appreciation for the magnitude of the incident:


[J.A.P.], what you told me was that this was not a big deal. And the message that
I want you . . . to receive from this is that this is a big deal . . . [I]t's a big deal
because this game, as you call it, is based on cutting off the blood and air supply
to the brain long enough so that that organ is impaired to the point of not
functioning, such that the person blacks out. 
3. The State also directs us to the victim's emergency root canal as evidence of "serious
permanent disfigurement" or "protracted loss or impairment of the function of any bodily member
or organ." Tex. Pen. Code Ann. § 1.07(a)(46) (West 1994). We need not address this argument
because we hold that the evidence was sufficient to find that choking causes a substantial risk of
death.