**AFFIRMED and Opinion Filed November 26, 2018**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00359-CR

**ROBERT B. CRUZ, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 379th Judicial District Court**
**Bexar County, Texas**
**Trial Court Cause No. 2017CR6890**

## MEMORANDUM OPINION

Before Justices Bridges, Francis, and Lang-Miers
Opinion by Justice Francis

Robert B. Cruz appeals his conviction and punishment following a jury trial for the offense of retaliation. In two issues, appellant contends the evidence is legally insufficient to support either his conviction or the findings of true on the two punishment enhancement paragraphs. We affirm the trial court's judgment.

Appellant was a parolee in an intensive supervision program. Appellant's parole officer was Monica Delavasco and Delavasco's unit supervisor was Irvin Washington. Appellant interacted with both Delavasco and Washington during his time on parole.

Delavasco told the jury that because appellant was a participant in the program, he was required to wear a GPS monitoring bracelet. Several months before the incident in question, appellant was brought to the parole office for tampering with his GPS monitor. When a parole

officer has a client who violates parole, such as by tampering with monitoring equipment, the supervisor also meets with the client. Because of this, Washington met with appellant and inspected his monitoring bracelet. Washington testified appellant's bracelet was cracked and looked like it had been super-glued together. Appellant was arrested for violating the conditions of his parole and sent back to jail.

After appellant was released, he returned to the parole office to meet with Delavasco. On his way in, appellant encountered Washington in the lobby. Washington saw appellant and said "I see you are back," before continuing to walk to the secure area. Delavasco came out to the lobby and brought appellant back to her office.

As Delavasco was going over appellant's parole conditions and scheduling, appellant mentioned he had run into Washington. Appellant leaned in and said "When I get out of this monitor program and off parole, I'm going to pop that n****r." When Delavasco asked appellant why he would say something like that knowing she would have to report it, he responded, "Because I'm a Mexican and he's a miata." Delavasco said "miata" is a Hispanic slang term for "n****r."

Delavasco ended the meeting and went to talk to Washington while appellant waited in the lobby. After reviewing the situation, an emergency warrant was issued and appellant was arrested and charged with the offense of retaliation. At trial, Delavasco testified she perceived appellant's statement as hostile and, in her experience in law enforcement, the term "pop" was "a street slang term for shoot and/or kill." Washington testified appellant's threat did not immediately affect him because he expected to be the focus of some ill-will as a result of his job. He did, however, feel it was entirely possible for such a threat to be carried out.

After hearing the evidence, the jury found appellant guilty of retaliation. Appellant elected to have the judge determine his punishment. At the punishment hearing, the State sought to use

two prior convictions for enhancement purposes. Appellant pleaded "not true" to each prior conviction.

As proof of the prior convictions, the State presented the testimony of fingerprint expert, Gina Martinez. She compared fingerprints of appellant taken earlier that day with the fingerprint card in appellant's penitentiary packet. Martinez testified appellant's name was on the "pen pack" and the finger print card listed appellant's birth date and social security number. The pen pack was admitted without objection. Martinez compared the fingerprints she took that day with the fingerprint card in the pen pack and concluded the fingerprints matched. The pen pack contained photographs of appellant, judgments for the prior convictions being used for enhancement, and an affidavit certifying that the documents in the packet were true and correct. The trial court found the enhancement paragraphs true and sentenced appellant to twenty-five years in prison.

In his first issue, appellant contends the evidence is legally insufficient to support his conviction. Specifically, appellant contends the State failed to show he had the "conscious object or desire" to kill Washington or that he was reasonably certain his conduct would result in Washington's death. When reviewing a challenge to the legal sufficiency of the evidence supporting a criminal conviction, we view the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011). Each fact need not point directly and independently to the guilt of the appellant as long as the cumulative force of all the incriminating circumstances is enough to warrant conviction. *See Kennemur v. State*, 280 S.W.3d 305, 313 (Tex. App.—Amarillo 2008, pet. ref'd). Circumstantial evidence is as probative as direct evidence and can be sufficient alone to establish an accused's guilt. *Id*.

To prove the offense of retaliation as alleged in the indictment, the State was required to prove appellant intentionally or knowingly threatened to harm Washington by an unlawful act in retaliation for or on account of his service as a public servant. TEX. PENAL CODE ANN. § 36.06(a). One of the purposes of the retaliation statute is to encourage a certain class of citizens to perform vital public duties without fear of retribution. *See In re B.M.*, 1 S.W.3d 204, 207 (Tex. App.—Tyler 1999, no pet.). Retaliation is a result oriented offense and the focus is on whether the conduct is done with an intent to effect the result specified in the statute. *See In re B.P.H.*, 83 S.W.3d 400, 407 (Tex. App.—Fort Worth 2002, no pet.).

Appellant argues that, while the jury may have found the term "pop" means to "kill" based on Martinez's testimony, the State failed to show appellant consciously wanted to kill Washington or that "he intended to bring about the desired result of killing [him]." But the State did not have to prove appellant intended to kill Washington; only that he intended to threaten him. *See In re B.M.*, 1 S.W.3d at 207. The statute does not require the person making the threat actually intend to carry it out. *Id.*

Appellant asserts for the first time in his reply brief that the State also failed to show his threat was in retaliation for, or on account of Washington's service as a public servant. In support of this, appellant points to Delavasco's testimony that appellant said he made the threat because he was Mexican and Washington was black. It is well established that we need not address an issue raised for the first time in a reply brief because it has not been properly presented for review. *See State v. Sanchez*, 135 S.W.3d 698, 700 (Tex. App.—Dallas 2003), *aff'd*, 138 S.W.3d 324 (Tex. Crim. App. 2004).

Even assuming it was properly presented, appellant's argument is without merit. Retaliatory intent may be inferred and we take into consideration the context in which the threat was made. *See In re B.P.H.*, 83 S.W.3d at 407; *Meyer v. State*, 366 S.W.3d 728, 731 (Tex. App.—

–4–

Texarkana 2012, no pet.); *Salinas v. State*, No. 04-06-00096-CR, 2007 WL 3171256 at *3 (Tex. App.—San Antonio 2007, no pet.). In this case, Washington was instrumental in having appellant sent to jail for a parole violation and appellant made the threat when he saw Washington at the parole office soon after he was released. Although Washington's race may have played some role in appellant's animosity towards him, the context of appellant's statement was sufficient to allow the jury to infer Washington's service as a parole officer was the primary motivation for the threat. We conclude the evidence is sufficient to support appellant's conviction and we resolve his first issue against him.

In his second issue, appellant contends the State failed to present sufficient evidence to support the trial court's findings of true on the two enhancement paragraphs alleged in the indictment. To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists and (2) the defendant is linked to that conviction. *See Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). The State need not offer any specific document or mode of proof to establish the prior offense. *See id.* at 921–22. But, it is incumbent on the State to show by independent evidence that the defendant is the person previously convicted. *See Beck v. State*, 719 S.W.2d 205, 210 (Tex. Crim. App. 1986). This is frequently done by expert testimony identifying known fingerprints of the defendant with fingerprints in the offered criminal records. *Id.*

To prove appellant's prior offenses, the State submitted a certified pen pack with appellant's photographs, fingerprints, and judgments showing two earlier convictions. Appellant initially objected to admission of the packet on the ground that no predicate had been laid showing the judgments in the packet related to him. But, after Martinez testified the fingerprint card in the

packet contained appellant's birthdate and social security number, appellant affirmatively stated he had no objection to admission of the packet into evidence.[1]

Appellant now asserts the State failed to link him to the prior convictions because the fingerprint card in the pen pack was for a different offense than the convictions being used for enhancement. A fingerprint card in a pen pack refers to the packet as a whole, however, and need not have been created in connection with the offense being used for enhancement purposes. *See Sanders v. State*, 695 S.W.2d 646, 648 (Tex. App.—Dallas 1985, no pet.). There is no requirement that the card specifically list or refer to the judgments being submitted. *See Hallmark v. State*, 789 S.W.2d 647, 651 (Tex. App.—Dallas 1990, pet. ref'd).

In this case, the certification affidavit for the pen pack listed the cause numbers for both the prior offenses being used for enhancement. The packet contained photographs of appellant as well as fingerprints matching the prints obtained from appellant earlier that day. Finally, the judgments of conviction for the enhancement offenses each bore appellant's name. We conclude the evidence was sufficient to support the trial court's finding of true to each of the enhancement paragraphs. *See id.*; *Beck*, 719 S.W.2d at 210. We resolve appellant's second issue against him.

We affirm the trial court's judgment.

/Molly Francis/
_____
MOLLY FRANCIS
JUSTICE

Do Not Publish
Tex. R. App. P. 47.2(b)
180359F.P05

---

[1] Appellant argues in his reply brief that Martinez failed to show she had independent knowledge of appellant's name, date of birth, and social security number. Again, issues cannot be raised for the first time in a reply brief. *See Sanchez*, 135 S.W.3d at 700. Furthermore, appellant does not dispute that the name, birth date, and social security number on the fingerprint card are his. More importantly, appellant's complaint goes to the admissibility of the packet to which he did not object. Failure to object to the admission of evidence waives appellate complaints. *See Saldano v. State*, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002).



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

ROBERT B. CRUZ, Appellant

No. 05-18-00359-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 379th Judicial District
Court, Bexar County, Texas
Trial Court Cause No. 2017CR6890.
Opinion delivered by Justice Francis.
Justices Bridges and Lang-Miers
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered November 26, 2018.