**Affirmed and Opinion Filed August 9, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-23-00521-CR**

**ALEX PERRY NEAL, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 296th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 296-82977-2022**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Pedersen, III, and Carlyle
Opinion by Justice Partida-Kipness

Appellant Alex Perry Neal appeals his conviction for the third-degree felony offense of obstruction or retaliation against a public servant. TEX. PENAL CODE § 36.06(a)(1)(A). In a single issue, Neal contends the evidence was legally insufficient to support the conviction. We affirm.

## BACKGROUND

Detective Jeffrey Rich is a detective with the Plano Police Department (PPD). In August 2018, another PPD officer asked Detective Rich to assist in a case involving allegations of online harassment. Detective Rich served a search warrant

on a social media company to identify the person posting certain statements online. Detective Rich then forwarded the information he received to the lead detective. Detective Rich had no other involvement with that case. The person committing the online harassment in that case was Neal. In April 2021, the PPD's professional affairs sergeant called Detective Rich and alerted him to a complaint made by Neal against Detective Rich concerning his involvement in the 2018 harassment case and a phone call the PPD recorded regarding Neal's complaint. The sergeant also told Detective Rich that Neal had mentioned Detective Rich and his daughter. Then, in May 2022, Neal attempted to electronically file what purported to be three criminal indictments for felony charges with Detective Rich listed as a defendant. The indictments accused Detective Rich of tampering with a government record, continuous sexual abuse of a child, and trafficking of persons.

The first fake indictment alleged Detective Rich committed the offense of tampering with a government record and breach of computer security. It also included a vehicle description of a vehicle previously owned by Detective Rich. The inclusion of the vehicle description alarmed Detective Rich. The fake indictment also listed Brian Kailbourne and Keith Boutte as witnesses who testified before the grand jury. Those names were significant to Detective Rich regarding Neal because those names appeared in the return information received from the social media company in 2018.

The second fake indictment included the same vehicle description and offenses as in the first filing and again listed Kailbourne and Boutte as witnesses. It also included Detective Rich's former home address. Detective Rich testified it was "absolutely" alarming to see his former home address on the fake indictment:

> Being that I'm in the position or job that I'm in, I'm very aware of my social presence or my footprint in the Internet, and I work very diligently to maintain confidentiality of my home address for the protection of my family and things like that. And the fact that it was able to be determined on here, even though it was an old address, it was concerning to me.

The third fake indictment again included the same vehicle description and Detective Rich's former home address and listed Boutte as a witness. That document included an additional address, which Detective Rich discovered later was an address that Neal is familiar with. It also listed three additional witness names that he did not recognize. The third filing, however, altered the alleged offenses. That filing alleged offenses for continuous sexual abuse of a young child or disabled individual and the trafficking of persons. The document also stated the offenses were committed on persons from "Next Level Sports" and "Dallas Figure Skating Club." Detective Rich's daughter is an athlete and part of the Dallas Figure Skating Club. He is also on that club's board of directors. Seeing his daughter's club listed on the fake indictment made him feel "pretty concerned for the welfare of my family." Detective Rich was not familiar with "Next Level Sports."

Neal's attempted electronic filings were received by Deputy District Clerk Brittany Jagger in the civil family office of the Collin County District Clerk's Office

–3–

on May 4, 2022, May 9, 2022, and May 11, 2022. Jagger testified she was initially alerted "that something wasn't right" because indictments "do not get filed with the civil family office." Rather, indictments "get filed only in the criminal office," are "always paper filed," and are not filed through the court's e-filing system. Other aspects of the indictments also looked suspicious to Jagger. For example, the State of Texas was listed as the filing party and did not include a department name or attorney name, such as the district attorney's office and an employee of the district attorney. Jagger contacted the supervisor of the criminal office about the attempted filings and asked her to look at the documents and advise Jagger on what to do with the filings. When the supervisor came to Jagger's desk to review the documents, they called the phone number listed as "the firm phone number" on the filings and discovered the number was for the Texas Secretary of State. They were told the Secretary of State had not filed the documents and "had no idea" what Jagger was talking about. On May 12, 2022, Jagger rejected the three attempted filings and turned them over to the Collin County Sheriff's Office for investigation.

Investigator Matthew Polk was lead investigator on this case. He issued subpoenas to the Texas Office of Court Administration (OCA) to obtain the IP address associated with the attempted filings. From the information received from OCA, Investigator Polk determined AT&T managed the IP address. He then issued a subpoena on AT&T to obtain the customer information associated with the IP address. AT&T provided the customer's name, service address, contact phone

number, and email address. The billing party was listed as Karen Neal, who is Neal's mother. The service address listed was Neal's home address. The Sheriff's Office obtained a search warrant for that address, which Investigator Polk executed with other officers. After knocking on the front door, officers made contact with the residents inside. The officers told the residents they were there for a search warrant but did not provide details about the warrant. Investigator Polk then heard Neal say, "Is Jeff Rich going to jail today?" Investigator Polk testified he believed at that point in the investigation Neal was involved in the attempted filings:

> Given the other factors that we already knew before we arrived to the house, and not having any conversation with Alex before he made that statement, led me to believe that he was involved in the filings.

Following the investigation, the State indicted Neal on the charge of obstruction or retaliation against a public servant pursuant to Texas Penal Code § 36.06(a)(1)(A). The State also indicted Neal for the state jail felony offense of tampering with government records with intent to harm. The indictments were filed under separate cause numbers in the trial court but tried together in a single trial. The jury convicted Neal on both charges. This appeal relates only to the third-degree felony conviction for obstruction or retaliation against a public servant.

**STANDARD OF REVIEW**

We review a sufficiency challenge by considering all the evidence in the light most favorable to the verdict and determine, whether, based on the evidence and reasonable inferences therefrom, a rational jury could have found the essential

elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). We defer to the fact finder's credibility and weight determinations because the fact finder is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Cisneros v. State*, No. 05-22-00406-CR, 2023 WL 4992604, at \*3 (Tex. App.— Dallas Aug. 4, 2023, no pet.) (mem. op., not designated for publication) (citing *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013)). The fact finder can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Evidence is sufficient if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

## APPLICABLE LAW

The central purpose of the retaliation statute is to encourage public servants or other specified individuals to perform vital public duties without fear of retribution. *Doyle v. State*, 661 S.W.2d 726, 729 (Tex. Crim. App. 1983); *Brock v. State*, 495 S.W.3d 1, 16 (Tex. App.—Waco 2016, pet. ref'd). A threat to harm

another by "an unlawful act" will support a conviction for retaliation under the statute. *Meyer v. State*, 366 S.W.3d 728, 731 (Tex. App.—Texarkana 2012, no pet.). To "threaten" can mean: (i) declaring an intention of hurting or punishing someone, (ii) a menacing indication of something dangerous or evil, (iii) an expression of an intent to inflict injury, or (iv) a source of danger or harm. *Shahzada v. State*, No. 05-17-00391-CR, 2018 WL 6322112, at *4 (Tex. App.—Dallas Dec. 4, 2018, pet. ref'd) (mem. op., not designated for publication) (citing *Olivas v. State*, 203 S.W.3d 341, 345 (Tex. Crim. App. 2006)).

However, the statute does not require that the threatened harm be imminent, that the actor actually intend to carry out his threat, or that he take any affirmative steps to carry out the threat. *Tims v. State*, No. 11-17-00109-CR, 2019 WL 1561725, at *2 (Tex. App.—Eastland Apr. 11, 2019, pet. ref'd) (mem. op., not designated for publication) (citing *Brock*, 495 S.W.3d at 16); *In re B.M.*, 1 S.W.3d 204, 207 (Tex. App.—Tyler 1999, no pet.); *Jones v. State*, No. 05-05-01633-CR, 2006 WL 3095535, at *5 (Tex. App.—Dallas Nov. 2, 2006, no pet.) (not designated for publication) (collecting cases). Moreover, a threat occurs "as soon as the actor utters the threatening words or otherwise initiates the threatening conduct." *Olivas*, 203 S.W.3d at 345; *Russie v. State*, No. 11-12-00162-CR, 2014 WL 2810135, at *2 (Tex. App.—Eastland June 12, 2014, pet. ref'd) (mem. op., not designated for publication) (applying *Olivas* and holding offense was completed at the time the defendant made the threat).

"Retaliation is a result oriented offense and the focus is on whether the conduct is done with an intent to effect the result specified in the statute." *Jones*, 2006 WL 3095535, at \*5 (first citing *In re B.P.H.*, 83 S.W.3d at 407, and then citing *Herrera v. State*, 915 S.W.2d 94, 98 (Tex. App.-San Antonio 1996, no pet.)). Retaliatory motivation may be shown by circumstantial evidence, and retaliatory intent may be inferred from an accused's acts, words, or conduct. *Id.* As such, "the accused's required intent to threaten harm can be proved by circumstantial evidence consisting of his or her acts, words, and conduct." *Shahzada v. State*, No. 05-17-00391-CR, 2018 WL 6322112, at \*4 (Tex. App.—Dallas Dec. 4, 2018, pet. ref'd) (mem. op., not designated for publication).

## ANALYSIS

In a single issue, Neal contends the evidence was insufficient to support the conviction for obstruction or retaliation under section 36.06. A person commits the offense of retaliation, as relevant here, if the person intentionally or knowingly threatens to harm another by an unlawful act "in retaliation for or on account of the service or status of another as a public servant." TEX. PENAL CODE § 36.06(a)(1)(A). Here, the indictment alleged that "on or about the 5th day of May, 2022" in Collin County, Texas, Neal did

> then and there intentionally and knowingly threaten to harm another, namely Det. Jeffrey Rich, by an unlawful act, namely, filing fraudulent True Bills of Indictment against Det. Jeffrey Rich, alleging felony offenses, in retaliation for or on account of the status of Det. Jeffrey Rich as a public servant, namely, a Plano Police Department Detective;

On appeal, Neal challenges the sufficiency of the evidence to support the jury's finding that Neal's attempt to file fake indictments constituted intentionally or knowingly threatening Detective Rich.[1] More specifically, he argues there was no evidence Detective Rich was threatened because the threat was not communicated to Detective Rich, and Neal did not intend for Detective Rich to know about the filings. Neal maintains he hoped the act of filing the fake indictments would cause Detective Rich to be arrested and, as such, he "obviously wanted the Clerk's Office, and anyone else, to think they were genuine indictments—not threats." We reject these arguments because the evidence showed Neal's filing of the fake indictments were threats as defined by the statute, the threats did not need to be direct or imminent, the threats were complete when Neal filed the fake indictments, and the jury could rationally infer Neal's retaliatory intent from his conduct and statements.

Here, the threat was complete upon the filing of the fake indictments. *See Olivas*, 203 S.W.3d at 345; *see also Russie*, 2014 WL 2810135, at \*2. Further, Neal concedes on appeal that the evidence shows he wanted the fake indictments to appear genuine, and he filed the fake indictments with the intent to cause Detective Polk to be arrested for felony offenses involving claims against children. The fact Neal did not send the fake indictments to Detective Polk directly or notify him of the fake indictments personally does not negate or even contradict the undisputed

---

[1] Neal does not challenge the sufficiency of the evidence to support the findings that filing the fake indictments was an unlawful act or that they were filed in retaliation for or on account of Detective Rich's status as a public servant.

evidence Neal intended the filings to harm Detective Polk by causing him to be arrested. Neal admitted as much when he asked officers executing the search warrant, "Is Jeff Rich going to jail today?"

Moreover, when Detective Rich learned of the fake indictments, he considered the filings a threat to his reputation, career, and family. Detective Rich testified it was "absolutely" alarming to see his former home address on the fake indictment, and he "absolutely" considered the filing of the fake indictments as threatening:

> My whole career has been based upon helping others and doing the right thing and protecting children. And to have an indictment like that, even a fake indictment like that would be -- is detrimental to my reputation and the community of law enforcement.
>
> I travel globally teaching other investigators how to investigate these types of cases and how to do the best for our children --
>
> MR. MCDANIEL: Objection, narrative.
>
> THE COURT: Overruled. Go ahead, sir.
>
> A. And having something like that that I would have to explain would be detrimental to me as well. I also teach -- or I'm sorry -- I also testify in certain technologies as an expert witness across the country. And having to explain that in front of, you know, either the State or Federal Court system would be problematic for me as well. Even though easily explained away as fake, it still causes harm to me.

Further, Neal's references to Detective Rich's former home address and prior vehicle alarmed Detective Rich and seeing his daughter's sports club listed on the fake indictment made him feel "pretty concerned for the welfare of my family."

Investigator Polk agreed if someone alleged he committed the offenses of sexual assault of a child, it would be detrimental and harmful to his reputation and career.

Based on this evidence, the jury could have found Neal intentionally or knowingly threatened to harm another by an unlawful act in retaliation for or on account of the service or status of another as a public servant, beyond a reasonable doubt. *See* TEX. PENAL CODE § 36.06(a)(1)(A); *see also Jones*, 2006 WL 3095535, at *6. We overrule Neal's sole appellate issue.

## CONCLUSION

Under this record, we conclude the evidence was legally sufficient to support the conviction. Accordingly, we overrule Neal's sole appellate issue and affirm the trial court's judgment.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

230521F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ALEX PERRY NEAL, Appellant

No. 05-23-00521-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 296th Judicial District Court, Collin County, Texas
Trial Court Cause No. 296-82977-2022.
Opinion delivered by Justice Partida-Kipness. Justices Pedersen, III and Carlyle participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 9th day of August 2024.